REBECCA E. HALSEY, and others *vs.* THE CONVENTION OF THE PROTESTANT EPISCOPAL CHURCH IN THE DIOCESE OF MARYLAND, and others.

*Statute 43 Elizabeth—Charitable uses—Jurisdiction in Equity —Construction of Will—Devises and Legacies to Religious Corporations—Article 38 of Declaration of Rights— Lapsed legacy—Section 313 of Article 93 of the Code— Section 128 of Article 93 of the Code—Distribution— Legacy to Executor.*

The Statute of 43 *Elizabeth* in regard to charities is not in force in Maryland, but a Court of chancery has jurisdiction, independent altogether of the Statute. to enforce a trust for charitable and religious purposes, provided the devise or bequest be made to a person or body corporate capable of taking and holding the property so devised and bequeathed, and provided, further, the object and character of the trust be definite and certain. When these exist—when the gift is made to one capable of taking it, and when the trust is declared in definite terms— a Court of chancery has the same power to enforce such a trust for charitable and religious purposes as it has to enforce a trust for any other purpose.

In the first clause of her will a testatrix devised the *Groveland Farm*, on which she resided to her nephew G. W. H. for life, and upon his death to her nephew L. H. for life, and upon his death she directs that one hundred acres of "the said Groveland Farm, including the portion where the mansion and surrounding outbuildings are located" should be set apart by her executor and trustee should she fail to do so herself; and the one hundred acres thus to be set apart, "with the buildings and improvements, furniture, pictures, portraits, and silver" she devised to the *Convention of the Protestant Episcopal Church of the Diocese of Maryland*, a body corporate, and its successors, forever, to be held as a place for a church school for boys, to be under the control and supervision of said corporation, and to be called the '*Warfield College*' in memory of her brother. By the second clause of the will, after providing a fund of $20,000. "face value in bonds or stocks or other good securities," the income of which

Halsey, *et al. vs.* The Convention of the Prot. Epis. Church, *et al.*

was to be paid to her sister A. E. W. for life, the testatrix directed that $5,000, of said fund should at the death of Mrs. W. "be paid to the *Convention of the Protestant Episcopal Church of the Diocese of Maryland* as an endowment to the above mentioned *Warfield College.*" By the fifteenth clause she gave whatever amount of money should be to her credit at the time of her death in the *Savings Bank of Baltimore* to the *Convention of the Protestant Episcopal Church of the Diocese of Maryland*, as a further endowment for *Warfield College.* By a codicil made three years after the date of the will, after referring to the gift in her will of the *Groveland* estate, &c., to her nephews G. W. H. and L. H. and at their death to become an Episcopal Church College to be named after her brother, she says: "As S. H. and L. H. are now dead and all things changed, I have to change my will also, and as the Church does not wish to be bothered with so much land, neither does G. W. H. it is my great desire to sell all the land but fifty acres, and the proceeds of sale to be invested in some good securities for the benefit of the *Warfield College.*" By the Act of 1878, ch. 403, the *Convention of the Protestant Episcopal Church of the Diocese of Maryland*, which for many years previously had been a lawfully incorporated body, was expressly authorize to receive by gift, devise or otherwise contributions in money, lands, or other property, and to hold the same for burial grounds, church colleges, church or parish schools. HELD:

1st. That the said devise of land to be held as a place for a church school, was made to a body corporate capable of taking and holding the same.

2nd. That the object for which said land and legacies were given, being declared to be for the purpose of founding a church school for boys, to be called the "*Warfield College,*" the object and purposes of the trust were definite and certain, and such as a Court of chancery has full power to enforce.

3rd. That the devise of the fifty acres of the Groveland farm, including the buildings and improvements, together with the furniture, &c., and the several bequests in the will and codicil to said Convention by its corporate name for the purposes of a church school for boys, to be called the "*Warfield College*" were valid devises and bequests.

4th. That the executors and trustee named in the will having declined to act, a Court of equity had the power to appoint a

Halsey, *et al. vs.* The Convention of the Prot. Epis. Church, *et al.*

trustee to set apart the fifty acres of the Groveland farm, including the buildings, and to sell the remaining portion of the farm, and to invest the proceeds in good securities for the support of the College.

5th. That it would be necessary, however, to get the sanction of the Legislature to these devises and bequests, as required by Article 38 of the Declaration of Rights contained in the State Constitution.

A legacy of money to a church corporation for the support of the Rector of the church and of the chapel connected therewith, and for the repair of the church, is a valid bequest, subject to the sanction of the Legislature.

Section 313 of Article 93 of the Code, provides that "no devise, legacy, or bequest shall lapse or fail of taking effect by reason of the death of any devisee or legatee * * * * in the life-time of the testator, but every such devise, legacy or bequest shall have the same effect and operation in law to transfer the right, estate, and interest in the property mentioned in such devise or bequest as if such devisee or legatee had survived the teststor." G. W. H. and L. H. two of the legatees of a testatrix, both died in the life-time of the testatrix, unmarried and without issue, and left neither brother nor sister surviving the testatrix, but two children of a deceased sister, and seven of a deceased brother surviving said testatrix. HELD:

1st. That said legacies must be distributed in accordance with section 128 of Article 93 of the Code which provides that "every brother and sister of the intestate shall be entitled to an equal share, and the child or children of a brother or sister of the intestate shall stand in the place of such brother or sister."

2nd. That both the brother and sister of the said legatees having died in the life-time of the testatrix, their children stood in the place of the deceased parent, and took such share as such parent would have taken if living, the two children of the deceased sister taking one-half, and the seven children of the deceased brother taking the other half of said legacies.

3rd. That G. W. H. and L. H. having died in the life-time of the testatrix, said legacies being the mere expectancy of a benefit to be derived under a will, were not subject to their testamentary disposition, and although they may have died leaving wills, yet they died intestate as to said legacies.

Where a bequest is made to one as executor, the presumption is that the legacy is given to him in his character as executor,—in other words the gift is annexed to his office; and if he refuses to act as executor, or dies before taking upon himself the trust, the legacy fails. But this presumption may be rebutted, and if upon a fair construction of the entire will, and taking into consideration the circumstances under which it was executed, it appears that the bequest was made to him, not in his fiduciary character, but as an individual, and from personal regard or affection, then, in such case, the intention of the testator must prevail and the executor will be entitled to the legacy, even though he should refuse to discharge the duties of the office.

APPEAL from the Circuit Court of Baltimore City.

The bill of complaint in this case was filed by the Safe Deposit and Trust Company of Baltimore, administrator *cum testamento annexo* of Susanna Warfield, deceased, against The Convention of the Protestant Episcopal Church of the Diocese of Maryland, and others. The case is stated in the opinion of the Court. The bequest to the Vestry of Holy Trinity, in Carroll County, mentioned in the opinion of the Court, is in these words:

"I give and bequeath six thousand dollars absolutely to 'The Vestry of the Parish of the Holy Trinity,' in Carroll County, to be invested in the first instance by my executor and trustee, in some security or securities, real or personal, deemed by him to be safe, in the name of said vestry, and I will and request that said vestry shall apply five-sixths of the income only, arising from said investment, to the support and salary of the Rector of the Church of the Holy Trinity, and of St. Barnabas Chapel at Sykesville, and the remaining one-sixth of the income from said fund or investment towards the repairs upon and insurance of said church and chapel, as to said vestry shall appear most judicious. If St. Barnabas Chapel should hereafter become organized as a separate and distinct congregation, with its own separate rector, then the income arising from this bequest shall there-

after be for the exclusive benefit of the salary of the Rector of the Holy Trinity, and repairs and insurance upon Trinity Church.''

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, FOWLER, and McSHERRY, J.

*John V. L. Findlay,* (with whom was *Thomas Mackenzie,* on the brief,) for the appellants.

*Skipwith Wilmer,* and *Daniel M. Thomas,* for the appellees, the Religious Corporations.

*Robert D. Morrison,* (with whom were *Howard Munnikhuysen,* and *N. P. Bond,* on the brief,) for the appellees, Holmes Thomas and Rebecca E. Pancoast, and her husband.

*D. K. Este Fisher, Wm. Cabell Bruce,* and *William A. Fisher,* filed a brief for the appellee, the Safe Deposit and Trust Company of Baltimore.

ROBINSON, J., delivered the opinion of the Court.

This is a bill filed for the purpose of obtaining a construction of the will of the late Susanna Warfield, and for the purpose of having certain trusts declared therein administered, and the estate settled, under the direction of a Court of equity.

The main questions are—First, whether certain devises and bequests made to the Convention of the Protestant Episcopal Church of the Diocese of Maryland are valid devises and bequests?

Secondly, To whom, and in what proportions, are the legacies bequeathed to George W. Holmes and Dr. Lewis Holmes, both of whom died in the life-time of the testatrix, to be distributed?

And thirdly, whether the bequest of $5000 to each of the executors, is to be construed as a bequest to them in *their character as executors,* or to *them as individuals?*"

1. In the first clause of the will, the testatrix devised the "Groveland" farm, on which she resided, to her nephew, George W. Holmes for life, and upon his death to her nephew, Dr. Lewis Holmes for life, and upon his death, she directed that one hundred acres of the said Groveland farm, including the portion where the mansion and surrounding out-buildings are located, should be set apart by her executor and trustee, should she fail to do so herself; and the one hundred acres thus to be set apart, "with the buildings and improvements, furniture, pictures, portraits and silver," she devised "to the Convention of the Protestant Episcopal Church of the Diocese of Maryland, a body corporate, and its successors forever, to be held as a place for a church school for boys, to be under the control and supervision of said corporation." The said school she directed should be called the "Warfield College" in memory of her brother, who formerly owned the "Groveland farm," and who intended himself to make a like disposition of said property.

By the second clause of the will, after providing a fund of $20,000 "face value in bonds or stocks or other good securities," the income of which was to be paid to her sister, Anna E. Wade for life, the testatrix directed that $5000 of said fund should at the death of Mrs. Wade "be paid to the Convention of the Protestant Episcopal Church of the Diocese of Maryland, as an endowment to the above mentioned Warfield College."

By the fifteenth clause, she gave whatever amount of money should be to her credit at the time of her death, in the Savings Bank of Baltimore, to the Convention of the Protestant Episcopal Church of the Diocese of Maryland, as a further endowment for the Warfield College.

Now, by a codicil made three years after the date of her will, after referring to the gift in her will of the "Groveland" estate, &c., to her nephews George W. Holmes and Lewis Holmes, and at their death to become an Episcopal Church College to be named after her brother, she says, "As Summerville Holmes and Dr. Lewis Holmes are now dead, and all things changed, I have to change my will also. And as the Church does not wish to be bothered with so much land, neither does George W. Holmes, it is my great desire to sell all the land but fifty acres, and the proceeds of the sale to be invested in some good securities for the benefit of the Warfield College."

Construing the will and codicil together, there can be no question as to the testatrix's intention in regard to the disposition of the Groveland property. And, as thus construed, the codicil operates as a revocation of the first clause of the will in two respects, and in these two only,—First, to reduce the quantity of land devised to the Convention of the Protestant Episcopal Church of the Diocese of Maryland for a church school from one hundred acres to fifty acres, the said fifty acres to include the Mansion House and out-buildings and improvements; and secondly, she directs the remaining portion of the farm to be sold, and the proceeds to be invested for the benefit of the college. And, such being the case, the question is whether the devise thus made to the Convention of the Protestant Episcopal Church of the Diocese of Maryland, is a valid devise? And this can hardly be considered an open question in this State. The *Statute of* 43 *Elizabeth* in regard to charities, is not, it is true, in force here, but it is well settled that a Court of chancery, has jurisdiction, independent altogether of the Statute, to enforce a trust for charitable and religious purposes, provided the devise or bequest be made to a person or body corporate capable of taking

and holding the property so devised and bequeathed, and
provided, further, the object and character of the trust
be definite and certain.

When these exist,—when the gift is made to one
capable of taking it, and when the trust is declared in
definite terms,—a Court of chancery has the same
power to enfore such a trust for a charitable or religious
purpose, as it has to enforce a trust for any other
purpose. *Barnum, et al. vs. Mayor, &c. of Baltimore, et
al.*, 62 *Md.*, 293; *Crisp, et al. vs. Crisp, et al.*, 65 *Md.*,
422; *Eutaw Place Baptist Church vs. Shively, et al.*, 67 *Md.*,
493. And, if so, the question resolves itself to this:
Is the Convention of the Protestant Episcopal Church
of the Diocese of Maryland capable of taking property
by gift or devise for the purpose of founding and main-
taining a church school for boys? And in regard to
this there cannot be, it seems to us, any contention. It
is now, and has been for years, a lawfully incorporated
body, and by the Act of 1878, chapter 403, the Conven-
tion of the Protestant Episcopal Church of the Diocese
of Maryland is expressly authorized "to receive, by gift,
devise, or otherwise, contributions in money, lands, or
other property, and to hold the same for burial grounds,
church colleges, church or parish schools." Here, then,
is a devise of land to a body corporate, capable of taking
and holding the same. And the object for which the
land and the legacies are given, is declared to be for the
purpose of founding and supporting a church school for
boys, to be called the "Warfield College." The object
and purpose of the trust are *definite and certain*, and
such as a Court of chancery has full power to enforce.
And, this being so, we are of opinion that the devise of
the fifty acres of the Groveland Farm, including the
buildings and improvements, together with the furni-
ture, pictures, portraits, silver, &c., and the several
bequests in the will and codicil to the Convention of the

Protestant Episcopal Church of this diocese for the purposes of a church school for boys, to be called the "Warfield College," are valid devises and bequests. And the executors and trustees named in the will having declined to act, a Court of equity has the power to appoint a trustee to set apart the fifty acres of the "Groveland Farm," including the buildings, and to sell the remaining portion of the farm, and to invest the same in good securities for the support of the college. It will be necessary, of course, to get the sanction of the Legislature to these devises and bequests, as required by Article 38, Declaration of Rights, Constitution.

It follows from what we have said, that the legacy of six thousand dollars to the vestry of the Holy Trinity, in Carroll County, for the support of the rector of the Church of the Holy Trinity and of St. Barnabas' Chapel, and for the repair of the church, is also a valid bequest, subject to the sanction of the Legislature.

2. We come then to the distribution of the legacies given to George W. Holmes and Lewis Holmes, both of whom died in the life-time of the testatrix. These legacies are saved from lapsing by sec. 313, of Art. 93 of the Code, which provides that "no devise, legacy or bequest shall lapse or fail of taking effect by reason of the death of any devisee or legatee * * * in the life-time of the testator, but every such devise, legacy or bequest shall have the same effect to transfer the right, estate and interest in the property mentioned in such devise or bequest as if such devisee or legatee had survived the testator." The construction of this section, is no longer an open question. In *Glenn vs. Bell,* 7 *G. & J.,* 367, the Court said "The time of the transfer is the death of the testator; and as the legatee died before the testator, he would not be the person meant as the object of the statutory transfer. But the law refers to such persons then *in esse* entitled by law to the distribution

of the legatee's estate, in case of intestacy." So, in this case, the persons entitled to the legacies given to George W. Holmes and Lewis Holmes, are the persons who were living at the time of the testatrix's death, and who were entitled under the Statute of Distribution to the estate of said legatees, as if such legatees had died intestate. So the question comes to this: Who are the persons thus entitled, and in what proportions do they take? The proof shows that George W. Holmes and Lewis Holmes both died in the life-time of the testatrix, unmarried and without issue, and that they left neither brother nor sister surviving the testatrix; that Holmes, Thomas and Rebecca·Pancoast are the only children of Eleanor W. Thomas, a sister of these legatees, and that she died in the life-time of the testatrix; that Rebecca E. Halsey, Nannie T. Smith, Sarah H. Wright, Edward A. Holmes, William P. Holmes, Thomas W. Holmes, and Mary A. Holmes are the only children of William Holmes, a brother of said legatee, and that he died in the life-time of the testatrix. So the next-of-kin of George W. Holmes and Lewis Holmes, *in esse* at the time of the testatrix's death, were the two children of Eleanor W. Thomas, a deceased sister, and the seven children of William Holmes, a deceased brother. And this being so, sec. 128, Art. 93, Code, provides as to the mode and manner in·which these legacies are to be distributed. It says that "every brother and sister of the intestate shall be entitled to an equal share, and the child or children of a brother or sister of the intestate, shall stand in the place of such brother or sister." If, then, Eleanor W. Thomas, the sister, and William Holmes, the brother, had survived the testatrix, each would have been entitled to the one-half of the legacies bequeathed to George W. Holmes and Lewis Holmes; but both having died in the life-time of the testatrix, their children stand in the place of the deceased parent,

and take such share as such parent would have taken if living. In other words, the distribution in such cases, is to be made *per stirpes* and not *per capita.* It follows, therefore, that the two children of Eleanor W. Thomas take the one-half, and the seven children of William Holmes take the other half, of these legacies. But then it is said, this may be true, provided that George W. Holmes and Lewis Holmes had died intestate, but that both having died leaving wills, this section does not apply. The answer to this is, that having died in the life-time of the testatrix, these legacies were not in any manner subject to their testamentary disposition; and although they may have died leaving wills, yet they died intestate as to these legacies. This was decided in *Glenn vs. Belt,* where the Court say, that "the expectancy of a benefit to be derived under a will is but a naked possibility." and cannot therefore, be disposed of by a will.

3. The only remaining question to be considered is whether the bequest of $5,000 to the executors is to be construed as a gift to them, in their character as executors, or to them as individuals, and this is the only question, it seems to us, about which there can be any real contention in this case. Where a bequest is made to one as executor, the presumption is that the legacy is given to him in his character as executor,—in other words, the gift is annexed to his office; and if he refuses to act as executor, or dies before taking upon himself the trust, the legacy fails. But this presumption may be rebutted, and if, upon a fair construction of the entire will, and taking into consideration the circumstances under which it was executed, it appears that the bequest was made to him, not in his *fiduciary character*, but as an individual, and from personal regard or affection, then, in such a case, the intention of the testator must prevail, and the executor will be entitled to the legacy, even though he should refuse to discharge the duties of the office.

Now, in this case, the testatrix was an unmarried woman, eighty years of age, and her nearest relatives were her sister, and her three nephews, George W. Holmes, Lewis Holmes, and Lewis W. Warfield. To her sister she gave the interest on bonds of the face value of $20,000 for life, and upon her death, $15,000 of this sum she gave to these three nephews. By the eighteenth clause of her will she devised and bequeathed to her nephews, George W. Holmes and Lewis Holmes, the rest and residue of her estate absolutely, to be equally divided between them. By the twentieth clause it was provided that in case any legacy or devise should fail to take effect, then the same was to go to her nephews, George W. Holmes and Lewis Holmes, to be equally divided between them. By the twenty-first clause, she appointed her nephew, George W. Holmes, to be her executor and trustee, and, in the event of his death, she appointed her nephew, Lewis Holmes, in his place. And after the death of Lewis Holmes, by the fourth item of the codicil, she appointed her grand nephew, Holmes Thomas, to act as executor with the said George W. Holmes; and in the clause of the codicil out of which this question has arisen she says:

"In my will of 1878 I left but $40,000. By the judicious management of Dr. Lewis Holmes it has accumulated considerably, which amount I bequeath as follows: To each of my executors, $5,000; to Lewis M. Warfield's two children, to be equally divided, $1,000; to Holmes Thomas' two children, to be equally divided, $1,000; to Rebecca Pancoast's two children, to be equally divided, $1,000," &c. It is the property which has accumulated by the judicious management of her nephew, Dr. Lewis Holmes, that she thus disposes of in this clause of the codicil. Nothing is said about the bequest of $5,000 being in lieu of commissions as executors, or in consideration of their discharge of the duties as executors. So,

construing the will and codicil together, and taking into consideration the circumstances under which these testamentary papers were executed, the fact that the executors were one of them her nephew and the other her grand nephew, both of whom she speaks of in terms of love and affection, it seems to us that this bequest to "each of my executors, $5,000," must be construed as a *gift to them as individuals, out of personal regard and affection entertained* for them by the testatrix, and not as a gift to them in *their character as executors.*

*Decree affirmed.*

(Decided 4th February, 1892.)