(Decided April 1st, 1897).

---

JOSEPH HENRY CHASSAING AND OTHERS *vs.* ALFRED B. DURAND.

*Bequest to Executor—When Failure to Act as Executor Forfeits the Bequest.*

Where a bequest is made to one as executor, the presumption is that the gift is annexed to the office; and if he refuses to act as executor, or dies before taking upon himself the trust, the legacy fails. But this presumption may be rebutted, and if it appear from the will and the circumstances under which it was executed, that the legacy was given to the party, not in his fiduciary character, but as an individual and from personal affection, he will be entitled to the same, although he should refuse to serve as executor.

By his will the testator gave certain personal chattels to his friend, A. B., who was also named as executor, "requesting him to follow some instructions given in my private letter to him." By a codicil the testator bequeathed a sum of money to A. B. in addition to the chattels, and added, "I thank him in advance for his services in closing up my estate as testamentary executor." A. B. renounced the office of executor. *Held*, that the pecuniary legacy to A. B. was not given to him as executor, but as the testator's friend, and that he was entitled to the same notwithstanding his failure to act as executor.

Appeal from a decree of the Circuit Court of Baltimore City (DENNIS, J.), by which it was adjudged that the legacy of $2,000 to the appellee, mentioned in the opinion of the Court, was not intended by the testator to be in compensation for the appellee's services as executor, and was not forfeited by his refusal to act as such.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, ROBERTS, BOYD and RUSSUM, JJ.

*Michael A. Mullin* and *Joseph A. Mullin,* for the appellants.

I. As Mr. Durand did not act as executor, the question whether the $2,000 were intended to be in addition to his commissions given by law, or in lieu thereof, does not arise. Section 6 of Article 93 of the Code, and the decisions interpreting it, have therefore no application to the case.

II. The general rule in similar cases is well established by authority. It is this : " Where legacies are given to persons in the character of executors, and not as marks of personal regard only, such bequests are considered to be given upon an implied condition, viz., that the parties clothe themselves with the character in respect of which the benefits were intended for them " * * * " The presumption is, that a legacy to a person appointed executor, is given to him, in that character, and it is on him to show something in the nature of the legacy, or other circumstances arising on the will, to repel that presumption." 2 *Williams on Exec. and Admrs.,* 1146 ; 1 *Roper on Legacies,* 777; 2 *Jarman on Wills,* 6th Am. ed. 966, 970 ; SIR JOHN LEACH, in *Dix* v *Read,* 1 S. and S. 239 ; LORD ALVANLEY, in *Harrison* v. *Rowley,* 4 Vesey, 216 ; *Calvert* v. *Lebbon,* 4 Beav. 222 ; *Hanbury* v. *Spooner,* 5 Beav. 630 ; *Kirkland* v. *Narramore,* 105 Mass. 31; *Stockpoole* v. *Howell,* 13 Vesey, 418 ; *Piggott* v. *Green,* 6 Simon, 72 ; *Rothmaylor* v. *Meyers,* 4 Desauss (S. C.), 223. This general rule is recognized in *Halsey* v. *The Convention,* 75 Md. 285.

As illustrations of the application of the law to analogous

cases, we refer to the following : *Reed* v. *Devaynes*, 2 Cox,
285 : " I appoint Devaynes and Smith executors of my will,
desiring them to accept of £100 each, as a mark of my
gratitude for the friendship they have shown me." Smith,
not acting, was held not be entitled to the £100. *Freeman*
v. *Fairlie*, 3 Merivale, 24. By a codicil, the testatrix named
Fairlie, an executor, jointly with others named in the will,
and desired that each of her executors would accept five
hundred sicca rupees in lieu of the £20 given them respect-
ively by the will, "as an acknowledgement for the trouble
they would have in the execution of the trusts of the will."
Fairlie alone acted, but paid the others their legacies. But
the chancellor (Eldon) refused to allow such payments.
*Slaney* v. *Witney*, L. R. 2 Eq. 418. " I also give to the
said A, B and C, my executors hereinafter named, £285
consols, upon trust during the life of L. Martin, to pay to
her the dividends for life to her separate use. Then I give
the said sum to the said A, B and C, for their own respec-
tive absolute use and benefit." Afterwards in the same will :
." I give to each of the executors of this my will, the fur-
ther sum of £200, of which I regard their acceptance as an
additional acknowledgement for the trouble they may have
in the execution thereof." A never renounced, but did not
act. It does not appear whether he claimed or received the
£200, as the question in the case arose 22 years after the
testator's death, and on the death of the life-tenant under
the trust. But the Court held that the gift to the execu-
tors and trustees, of the consols in remainder, was clearly
annexed to the office, and that the executor and trustee not
acting was not entitled to participate. *In re Appleton* (*Bar-
ber* v. *Tebbitt*), 29 Ch. Div. 893. The testator, after giving
his whole estate to trustees and executors thereinafter named,
in trust to pay legacies, &c., proceeded to give a legacy of
" £1,000 to John Tyler, of Leyton, Esq.," and among sev-
eral others, " £300 to my executor, James Tebbitt," and at
the end of the will appointed the said J. Tyler and James
Tebbitt, trustees and executors of his will. By a codicil he

bequeathed " to Frederick Oxley, solicitor, £200 free of legacy duty. I appoint the said F. Oxley executor and trustee in addition to those therein named, and in every other respect I confirm my said will." Oxley renounced probate, but claimed and was paid his legacy. But the Court refused to allow the same, and on appeal this ruling was confirmed, the legacy being considered as annexed to the office. *Kirkland* v. *Narramore*, 105 Mass. 31. After making bequests to certain legatees the testator continued : " I hereby appoint Franklin Narramore, of Goschen, as trustee, to take and keep the above legacies, the income of which he shall appropriate to their comfort so long as they live. After their decease, what remains I bequeath to the above trustee." *Held*, that the legacy was given to Narramore in his character of trustee, and that not having acted, his administratrix is not entitled to the legacy. See also, *Fletcher v. Hurd*, 14 N. Y. Supp. 388 ; *Humberston* v. *Humberston*, 1 P. Wms. 333.

III. Under the above authorities, it is submitted, the counsel for the appellee must point out something in the language of the will or the circumstances, to repel the presumption that the legacy was intended as compensation for the services which the appellee refused to perform. But the will and the circumstances strengthen the presumption against him, and leave no doubt of the testator's intention. (*a.*) The facts that he is named executor in the will, and that the legacy is given by the codicil, do not avail him. 2 *Jarman on Wills*, 970. (*b.*) The legacy of the furniture, &c., is not *ejusdem generis* and affords no help, for it is of chattels, not money, and is not absolute, but has some secret condition or trust attached to it, which cannot be said of the $2,000. (*c.*) But the testator's intent is evident, not only from the language, but the circumstances. When the will was executed, Mr. Durand's coexecutor resided at the domicile where the administration must be had and the bulk of the estate was situated, and on him, at least a moiety, and probably more, both of the labor and respon-

sibility of the administration would fall. But when the codicil was made, the coexecutor was dead, and Mr. Durand, resident in France, would have not only the whole labor and responsibility, but also the increased risk and inconvenience of acting at a distance from his home and in a strange forum. This sufficiently explains the testator's desire to grant an increased compensation. But the matter is set absolutely at rest by the testator's *thanking him in advance for his services in closing up his estate, as testamentary executor*, thus giving the legacy and stating the consideration in one and the same breath.

*Joseph W. Hazell* (with whom was *Ferdinand C. Dugan* on the brief), for the appellee.

The various bequests made to the appellee may very properly be held to have proceeded from an affectionate regard for him as a friend, and not to have proceeded from a mere desire to remunerate him as executor, especially in view of the fact that the law makes ample provision for such compensation. Even at common law the slightest intimation on the part of the testator that he thought of the executor in any other light, for instance, as a friend, a cousin, &c., was in numerous cases held to be sufficient to rebut the very strong presumption then obtaining, that a legacy to an executor was intended as compensation for services to be rendered as such. It being the long established English rule of chancery that a fiduciary office is honorary and gratuitous and that an executor must serve without recompense for his own services, he being strictly forbidden to make profit out of his office. *Schouler on Ex. and Adm.*, sec. 44. *In re Denby*, 3 De Gex, Fisher & Jones, a legacy " to my friend Mr. Joseph Smith, also of Manchester, banker's clerk, and one of the executors of this my will, of £50," was held good although he refused to administer. Also in *Dix* v. *Reed*, 1 P. Wms. 333, two persons were named as executors and given £50 each, and the testator added : "·I give unto my cousin, Thomas King,

the sum of £50, whom I appoint as joint executor in trust in this my will." The legacy was held good, although King refused to serve as executor.

It is submitted that under the law in Maryland and in others of the States, the common law presumption has been nullified, and that there is either no presumption at all or that it is in favor of the validity of the legacy irrespective of the subsequent qualification and service of the executor-legatee. The New York Statute, sec. 2737, of Throop's Annotated Code of Civil Procedure, is as follows: " But where the will provides a specific compensation to an exe cutor or administrator, he is not entitled to any allowance for his services, unless, by a written instrument filed with the surrogate, he renounces his specific compensation." *In re Mason, &c.*, 98 N. Y. 533, the will under consideration provided that "all the rest, residue and remainder of my estate not hereinbefore disposed of, I give, devise and bequeath unto my friends, A, B and C, who are hereinafter mentioned as the executors of this my will, in equal shares," the Court of Appeals held that " the bequest was not intended for the specific compensation mentioned in section 2737 of the Code. There is no language in the will indicating that it was meant to be in lieu of commissions. If these executors had renounced before letters were issued, they would have been entitled to receive the bequest;" indicating that under their Act it should affirmatively appear that a bequest was intended as compensation.

Section 6 of Article 93, Code of 1888, provides: " If anything be bequeathed to an executor by way of compensation, no allowance of commissions shall be made unless the said compensation shall appear to the Court to be insufficient, and if so, it shall be reckoned in the commission to be allowed by the Court." While the language used in the Maryland and New York statutes differs, those acts are virtually identical in effect, and the construction placed upon them is practically the same. *Halsey et al.* v. *The Convention of the Protestant Episcopal Church et al.*, 75 Md. 286.

ROBERTS, J., delivered the opinion of the Court.

Emile Ducatel, late of Baltimore City, in this State, died in the city of Paris, republic of France, in the month of June, 1894, leaving a last will and testament and certain codicils thereto, all of which have been duly admitted to probate in the Orphans' Court of Baltimore City and letters of administration with the will annexed of said deceased, were by said Court granted to Ferdinand E. Chatard, one of the executors named in said will, who accepted said trust and in due course of administration passed his first account in said Court. The other executor, Alfred B. Durand, named in said will, renounced the trust.

Among the numerous other bequests contained in said will, the testator in the twentieth clause thereof provided as follows:

" I give and bequeath to my friend, Alfred B. Durand, all my furniture of No. 9 rue Clapeyron, including my library and other books and pamphlets, wines, &c., and in fact all that is to be found in said premises, free of all testamentary expense, *requesting him to follow some instructions given in my private letter to him.*

By codicil No. 1 to said will the testator bequeathed as follows: " I bequeath to my friend, Alfred B. Durand, the sum of two thousand dollars, in addition to my household effects in No. 9 rue Clapeyron, and I thank him in advance for his services in closing up my estate as testamentary executor."

Doubts having arisen as to the construction proper to be placed upon certain parts of said will and of the codicils; and certain of the residuary legatees having objected to the payment of the legacy to said Durand, contending that by a proper construction of codicil No. 1, the said legacy of two thousand dollars was intended by the testator as compensation for the services which Durand was to render in the settlement of the testator's estate, and having renounced " all right and claim to letters testamentary on said will, or to act as executor thereof," he thereby disentitled himself

to claim or receive said legacy.    Because of the uncertain-
ties attending the administration of said estate under said
will, and the conflicting views entertained concerning the
testator's true intent and meaning as to the bequest to said
Durand, a Court of Equity has by this proceeding been ap-
pealed to for its direction and protection.    There is, how-
ever, but one inquiry before us on this appeal, the other
questions having been satisfactorily disposed of by the Court
below.    The question lies within very narrow limits and has
frequently been before the Courts, both in England and in
this country, for consideration and determination.    So that
we are only to ascertain and declare the testator's intention
as to the legacy claimed by Durand.    The facts of this par-
ticular case and the language employed by the testator in
conveying his wishes should control the result.    The tes-
tator was unmarried and had a numerous family relation-
ship, to most of whom he bequeathed something, either of
considerable or inconsiderable value.    In the will, dated
the 22nd of September, 1885, there is bequeathed to Dr.
Chatard the sum of $2,000 and to Mr. Durand the bequest
hereinbefore stated, but to none of his relations, who are
beneficiaries under his will, has he requested the perform-
ance of any trust or given them private instructions as to
matters not set out in this will.    This language significantly
points to Mr. Durand as his trustworthy friend, to whom
he committed the execution of certain private instructions
which he wanted carried out, but which he manifestly in-
tended should not be made public.    We think it defines in
very expressive terms the close and intimate relationship
existing between the testator and Mr. Durand, and suf-
ficiently accounts for the bequest to his friend.    Five years
later on the testator by codicil No. 1, executed at Paris and
dated June 5th, 1890, bequeathed to his friend, Mr. Du-
rand, the sum of two thousand dollars in addition to his
household effects in No. 9 rue Clapeyron, but he nowhere
intimates that the legacy to Mr. Durand or to Dr. Chatard
is given in lieu of commissions as executors, or in consid-

eration of the discharge of their duties as executors. There can be no controversy as to the rule of construction generally applied in cases of this character. The late MR. JUSTICE ROBINSON delivering the opinion of this Court in *Halsey's case*, 75 Md. 285, said : " Where a bequest is made to one as executor, the presumption is that the legacy is given to him in his character as executor, in other words, the gift is annexed to his office ; and if he refuses to act as executor, or dies before taking upon himself the trust, the legacy fails. But this presumption may be rebutted, and if, upon a fair construction of the entire will, and taking into consideration the circumstances under which it was executed, it appears that the bequest was made to him, not in his fiduciary character, but as an individual, and from personal regard or affection, then, in such a case, the intention of the testator must prevail, and the executor will be entitled to the legacy, even though he should refuse to discharge the duties of the office."

To the same effect is the law as settled in many well considered cases. The case of *Read* v. *Devaynes*, 2 Cox, Ch. 285, relied upon by the appellants in support of their contention, can scarcely be regarded as authority for their claim since we find SIR JOHN LEACH, V.-Ch., in delivering the judgment of the Court in *Cockerell* v. *Barber*, 2 Russ. 592, says, " The question is, whether it does appear upon the face of this will that the testator meant that Mr. Palmer, in respect of his trouble as executor, should be confined to the particular legacies which he has here given him. There is only one Judge who has adopted the opinion broadly, that a legacy given to an executor was to be considered as given on an implied condition, and that he could not take the legacy without taking upon himself the duties of the office. Even the Judge, who expressed that opinion, never carried it the length of a decision ; for, in *Road* v. *Devaynes*, the point ultimately was not decided. That case in truth was one which might well warrant strong expressions of doubt on the part of the Judge ; but those

expressions of doubt induced the executor to take upon himself the office, and thereby put an end to the question." Then after stating ·in full his reasons for the conclusion which he reached, which are clearly in accord with the views herein expressed, he adds, " For these reasons, I am of the opinion that this will and codicil furnish clear and decisive evidence that the testator in his bounty to Mr. Palmer regarded him not simply in the character of executor, but in the character of a near and dear friend, whom he considered as a special object of his regard." This case was on appeal affirmed by LORD ELDON—*S. C.*, 2 Russ. 599—and is supported by *In re Denby*, 3 De G., F. & J. 350; *Dix* v. *Reed*, 1 S. & S. 237; *In re Mason*, 98 N. Y. 533; *Burgess* v. *Burgess*, 1 Coll. 367; *Wildes* v. *Davies*, 1 Sm. & G. 475; *Slaney* v. *Watney*, L. R., 2 Eq. 418; *Pollexfen* v. *Moore*, 3 Atk. 272. It is needless to pursue this inquiry farther, as the doctrine which must control us in declaring the testator's intention in making the bequest to Mr. Durand has been announced in the *Halsey case, supra*, and is fully sustained by the English authorities, and is strictly in accordance with the canons of interpretation accepted as rules in the construction of wills. We think it only necessary to add that the will upon its face clearly demonstrates the fact that the testator was a man of intelligence, capable of knowing his own wishes and intentions and of expressing them in plain and exact terms, and that nearly five years before he bequeathed the legacy of two thousand dollars to his friend, Durand, he had nominated him as one of the executors of his will executed in 1885, and it is only reasonable to suppose that if he had intended the legacy to be accepted by him in his capacity of executor, or in lieu of his commissions, he would have employed apt words to convey his intention. The will executed in 1885 contains no less than twenty-three paragraphs, and there were subsequently, from time to time, executed eight codicils to the will, the first dated 1890, and the last in 1893. So that if the testator had desired to affix any condition to

the acceptance of said legacy to Mr. Durand, he had his will frequently under consideration and had the fullest opportunity of accomplishing his purpose. We find nothing in the record of this appeal to justify us in construing the will and codicils in accordance with the contention of the appellants, and must therefore affirm the decree of the Court below.

*Decree affirmed with costs.*

(Decided April 1st, 1897.)