[No. 30776. Department Two. July 29, 1949.]

THE NATIONAL BANK OF COMMERCE OF SEATTLE, *Respondent,* v. WILLIAM B. REINHARDT *et al., Respondents,* WHEATON COLLEGE *et al., Appellants.*[1]

[1]Reported in 208 P. (2d) 857.

*Bayley, Fite, Martin & Shorts,* for appellants.

*Kerr, McCord & Greenleaf,* for respondent The National Bank of Commerce.

*Wright & Wright,* for respondents Reinhardt *et al.*

*Elias A. Wright,* for respondents Houck *et al.*

ROBINSON, J.—This action involves the construction of the will of the late Grace Vaughn Bowman of Seattle. The circumstances giving rise to the case are these: As part of her long and complex will, the testatrix created numerous trusts for individual beneficiaries, in which Wheaton College, the American Bible Society, the Moody Bible Institute, and the Bible Institute of Los Angeles, appellants herein, were named as trustees. The beneficiaries were to receive the income from the trusts during their lives; and, upon the death of the named beneficiary of each of the trusts, the will provided that the corpus should pass to the trustee thereof.

There is nothing in the record suggesting that the appellant societies were not entirely willing to assume the trust responsibility. However, when money became available to the executors of the estate to set up the trust, the executors, acting through one of their attorneys, Mr. Elias Wright, cited the appellants into the King county superior court to show cause why they should not be barred from acting as trustees because of their lack of corporate capacity, and because they were not residents of the state or qualified to do business therein. All of the appellants appeared in that proceeding and renounced any rights to act, whereupon the court appointed the National Bank of Commerce as alternate trustee. The order of the court provided as follows:

"Otherwise each and every trust so established under the will of the deceased, as the money is distributed by the executors to the alternate trustee, shall be kept as a separate trust account for and on behalf of each beneficiary until the termination of the trust as provided by the will of the deceased, and as the same is terminated by the provisions of the will of the deceased the alternate trustee shall pay over to the remainderman the corpus of the trust, upon being duly receipted therefor; . . ."

Subsequently, the life beneficiary of one of the trusts, Lana Babcock, died, and the National Bank of Commerce, as alternate trustee, asked the advice of Mr. Wright as to whether it should now turn the corpus of this trust over to Wheaton College, which had been named in the will as trustee for that particular trust. Mr. Wright informed the bank that there was a serious question involved as to whether or not Wheaton College was entitled to receive the corpus because it had not administered the trust. Thereupon, the bank brought this action, requesting that the court determine what should be done with this particular fund, and asking for instructions as to its rights and duties respecting the similar situations which will arise upon the death of each of the other life beneficiaries. The amended complaint added Clara DeLone as an additional defendant, she being named as a beneficiary under the residuary clause of the will described as Group "N." Some, but not all, of the other possible beneficiaries under Group "N" intervened in the action. Reply to the answer of said interveners was made on behalf of the plaintiff bank, and thereafter motions for judgment on the pleadings were made by both the bank and by the four corporations who are appellants here. The court subsequently entered the decree from which this appeal has been taken.

The sections of the will material to this appeal, which the court was asked to construe, read, in part, as follows:

"GROUP 'A.'

"To Minnie Hansen, 1431 East Ward Street, Seattle, Washington, as follows: I direct my executors to deposit with the following named societies the sums set opposite their names,

to be held by said societies as a trust fund for said Minnie Hansen, to-wit:

"American Bible Society, New York City, New York, the sum of ninety-five hundred dollars.

"Wheaton College, Wheaton, Illinois, the sum of five thousand dollars.

"Moody Bible Institute, Chicago, Illinois, the sum of eighty-five hundred dollars.

"Bible Institute of Los Angeles, Los Angeles, California, the sum of one thousand dollars,

which institutions shall invest the said monies in investment funds, or trusts, and the income therefrom shall be paid to the said Minnie Hansen, during her lifetime. . . .

"Upon the death of the said Minnie Hansen, then I direct that the principal amount remaining in the possession of said society or societies shall go to the said society or societies. . . .

"Group 'C.'

"I give, devise and bequeath to the following societies, the following sums, or amounts; the said societies, and each of them, to keep the said amounts as trust funds, and pay the income therefrom, at least semi-annually, to the following named persons:

"American Bible Society, New York City, New York: for

"William B. Reinhardt, 1216 20th North, Seattle, Washington, the sum of five thousand dollars.

[Here follow the names of ten additional beneficiaries, the total sum bequeathed amounting to $44,000.]

"Wheaton College, Wheaton, Illinois: for

"William B. Reinhardt, 1216 20th North, Seattle, Washington, the sum of one thousand dollars.

[Here follow the names of nine additional beneficiaries, the total sum bequeathed amounting to $36,500. Included among the beneficiaries listed in this section is the following: "Lana Babcock, Northfield, Minnesota, the sum of twenty-five hundred dollars."]

"Moody Bible Institute, Chicago, Illinois: for

"William B. Reinhardt, 1216 20th North, Seattle, Washington, the sum of five thousand dollars.

[Here follow the names of six additional beneficiaries, the total sum bequeathed amounting to $28,500.] . . .

"Group 'J.'

"I give, devise and bequeath to the Bible Institute of Los Angeles, Los Angeles, California, the following amounts,

as trust funds, for the following named persons, the income therefrom to be paid semiannually to said beneficiaries:

"Mrs. Millie Kegley, 1605 Federal Avenue, West Los Angeles, California, the sum of twenty-five hundred dollars.

"Milo Sellon, Nehalim, Oregon, the sum of twenty-five hundred dollars.

"Frank Sellon, Cunningham, Kansas, the sum of twenty-five hundred dollars.

"Should any one or two of the beneficiaries mentioned in this trust die before me, I direct that the survivor or survivors in this group shall receive the income of the one or two deceased, during the lifetime of the survivors or survivor. Upon the death of the last remaining beneficiary in this group, then I direct that the corpus of this bequest go to and become the property of the Bible Institute of Los Angeles, to be placed by that institution and used as a part of its Student Fund."

Group "N," the residuary clause, provides, in part, as follows:

"Should there be any residue, or should any life estate be fulfilled, and not otherwise provided for in this Will, then I direct that from such residue remaining or reserved, or remaindered, as herein set forth, there shall first be paid to the American Bible Society, of New York City, New York, the sum of twenty thousand dollars, as a trust fund, or annuity; the income thereof to be paid at least semi-annually to Clara DeLone, 46 South Duke Street, York, Pennsylvania, niece of my deceased husband, during her lifetime; but should she die before me, the income or equity of said trust so established shall be paid in equal shares to the then living children of the body of Clara Houck, now resident at 213 North Mulberry Street, Hagerstown, Maryland; and upon the death of the said Clara DeLone after my decease, or upon the death of the said children last mentioned, should they become the beneficiaries of said trust, the corpus of said trust shall be and become the property of the said American Bible Society, of New York City, New York.

"After the establishment of the twenty thousand dollar trust fund, as hereinbefore set forth in this group, then I direct that any remaining funds be turned over to the Moody Bible Institute, of Chicago, Illinois, up to the sum of thirty thousand dollars, to establish life annuities for Mellie Douglass, Laura Slaybaugh and Emma Miller, all presently residing at Hanover, Pennsylvania, nieces of my deceased

husband; the income from said trust to be paid to them semi-annually, share and share alike, in their lifetime, and upon their death, the income to be paid, semi-annually, to the children of their bodies, per stirpes, and not per capita, during the lifetime of said children and upon the death of said children the corpus of the trust to become the property of the Moody Bible Institute; that is, as each of said children becomes deceased, that portion of which he or she had the benefit, shall go to the said Institute.

"After the establishment of the two foregoing trusts, should there be any estate remaining, I direct that said remaining funds be turned over to the Wheaton College, Wheaton, Illinois, up to the sum of twenty thousand dollars, to establish life annuities for Clara Houck and Edward Bowman, presently residing at 213 North Mulberry Street, Hagerstown, Maryland, niece and nephew of my deceased husband; the income from said trust to be paid to them, semi-annually, share and share alike, in their lifetime; and upon the death of either Clara Houck or Edward Bowman the income which they would have received shall be paid to the children of the body of Clara Houck during their lifetime, and upon the death of said children the corpus of the trust to become the property of the Wheaton College, Wheaton, Illinois."

The residuary clause then continues, listing additional bequests to be devised should any estate remain after the establishment of the foregoing trusts. Among these is an outright gift of three thousand dollars to Wheaton College.

The trial court reached the conclusion that the bequests made to the trustees in Groups "A," "C," and "J" were "contractual as well as testamentary in character." In a tentative opinion, which set forth the reasons for its final decree, the court stated:

"The right of each respective society to take the corpus immediately upon the cessation of the respective individual's right of use of the income thereof, seems to be conditioned upon the respective societies having performed the job of administering certain trust responsibilities."

The court, therefore, decided that, since the appellant societies had not undertaken the trust responsibility, they had not performed "their part of the implied contract or condition." Under such circumstances, the court held that

the consideration had failed, and that, in consequence, the societies were not entitled to claim the corpus of any sums arising through the death of the various life beneficiaries in Groups "A," "C," and "J." It directed that the trust fund in the principal sum of twenty-five hundred dollars, which was held by the bank during the life of Lana Babcock, and each of the other trust funds held by the bank under Groups "A," "C," and "J" (upon the death of each of the life beneficiaries entitled to the income therefrom), should be distributed by the bank in accordance with the terms of Group "N," the residuary clause.

In considering whether or not the trial court was correct in its decision, it is first important to emphasize that Groups "A," "C," and "J" contain no express language indicating that the trustees' right to the corpus is conditional upon their performance of their duties as trustees. Such a condition, if any, must be implied. In support of their contention that it should be implied here, intervener respondents quote the following language from 57 Am. Jur. 1034, § 1523:

"Where a testamentary gift is made to a person named as executor of the will or is so worded as to indicate that it was given in consideration or contemplation of services to be rendered after the testator's death in connection with his business affairs or the administration and settlement of his estate, the question arises whether the gift is to be regarded as upon the implied condition that the donee assume the duties of executor or trustee or render the services mentioned. There is in this connection a relatively well-settled rule of construction that a legacy to one named as executor or trustee which is not clearly intended as a mark of personal regard only is to be taken as subject to the implied condition that the donee assume the status mentioned, and an analogous conclusion is sometimes reached with respect to gifts contemplating other than executorial services."

The rule expressed in the foregoing paragraph is, however, significantly qualified by the clause "which is not clearly intended as a mark of personal regard only." In the present case, there is a great deal of evidence in the will itself to show that the dominant purpose of the testatrix in making her will was to benefit religious and charitable in-

stitutions. It was her intention that by far the greater portion of her estate should eventually come under their control. Three of the appellants, the American Bible Society, Wheaton College, and the Moody Bible Institute, were the primary objects of her bounty, and received larger amounts under her will than any other legatees. Under such circumstances, a presumption that she intended these societies to receive their bequests only if they performed their trust duties, would seem to be unwarranted.

The court, however, stated, in its tentative opinion:

"It seems clear to the court that the only possible reason why the testatrix designated so many non-professional trustees to administer the corpus for the benefit of the various individuals was to insure to those individuals the full income from the corpus, undiminished by costs and expenses of trust administration. It seems apparent that she must have anticipated that the respective societies should absorb all such costs as a condition to their receiving the corpus itself after trust responsibility had ceased."

It is possible that the court is correct in its analysis of the testatrix' purpose in setting up this involved system of trusts; and yet, if her sole motive in selecting these non-professional trustees was to save money for the life beneficiaries, she chose a singular method to bring about that result; for the appellant societies were clearly intended not only to receive more money than a professional trustee could possibly have received in fees, but also, presumably, a great deal more than the life beneficiaries themselves were to receive. However numerous the trusts, it cannot be denied that the amounts of corpus bequeathed to the appellant societies were far in excess of any amount which could possibly be considered as compensation for their services as trustees.

We think that the situation is covered by the following quotation from *Chassaing v. Durand*, 85 Md. 420, 37 Atl. 362, which cites the case of *Halsey v. Convention of Protestant Episcopal Church*, 75 Md. 275, 285, 23 Atl. 781, to the following effect: .

" 'Where a bequest is made to one as executor, the presumption is that the legacy is given to him in his character

as executor, in other words, the gift is annexed to his office; and if he refuses to act as executor, or dies before taking upon himself the trust, the legacy fails. But this presumption may be rebutted, and if, upon a fair construction of the entire will, and taking into consideration the circumstances under which it was executed, it appears that the bequest was made to him, not in his fiduciary character, but as an individual, and from personal regard or affection, then, in such a case, the intention of the testator must prevail, and the executor will be entitled to the legacy, even though he should refuse to discharge the duties of the office.' "

It is our opinion that the above quotation correctly states the American rule. Although it refers to an executor-legatee only, its logic is equally applicable to the case of anyone who is to perform services in connection with the testator's business or the settlement of his estate, and at the same time receives a bequest in his will. The identical thought is expressed in *Kirkland v. Narramore*, 105 Mass. 31, 7 Am. Rep. 497, where the legatee involved was, as in the case at bar, a trustee.

Intervener respondents have referred us to a number of English cases on the point at issue. With the possible exception of some of the language in *Read v. Devaynes*, 3 Bro. CC. 95, 29 Eng. Rep. 429 (also sometimes cited as 2 Cox, ch. 285), which was decided in 1790, and expressly disapproved in *Chassaing v. Durand, supra*, we find nothing in these cases tending to contradict or modify the above proposition. On the contrary, our study of these cases has convinced us that the following quotation from *Piggott v. Green*, 6 Sim. 72, 58 Eng. Rep. 522, states the rule generally applied by the English courts, which, it will be noted, is in accord with the American rule:

"The rule is that, where a legacy is given to an executor, *prima facie*, it is given to him for his trouble; and, if he refuses the office, he is not entitled to it; *but if it can be collected from the whole of the will that the legacy was not given to him in respect of the office, then he will be entitled to it.*" (Italics ours.)

The proposition that a gift to an executor or trustee is presumptively made to him in that capacity is entirely

sound. Where properly applied, it prevents individuals whose only relation to the testator arises from the services which they are to perform for his estate, from collecting compensation for those services when they do not in fact perform them. But to apply it here, to the detriment of such apparent objects of the testatrix' concern as are the appellants, in favor of a group of individuals who are not even mentioned in her will until the residuary clause (particularly when, as in this case, the will contains a proviso that, should there not be enough money to pay all the bequests, they should, in general, go to the legatees in the order in which they are mentioned in the will) would be such a violation of the testatrix' intent as is sanctioned neither by the spirit of the rule nor by the wording of any of the cases applying it.

Respondents set forth a number of "clues" adduced either from the general construction of the will or from certain of its wording which they allege "bolster the presumption that in all three of the disputed residuary dispositions the bequest was conditional upon the performance of trustee duties by the societies named." None of these "clues," however, explicitly require the interpretation which respondents seek to give them; and in the light of the will, considered as a whole, we think that interpretation erroneous. We are of the opinion that the will fails to disclose an intention on the part of the testatrix that her bequests to the appellant societies should be conditional upon their serving as trustees, and that such an intention should not be implied.

Intervener respondents urge, however, that certain language in Group "A," read in the light of the situation as it has developed, unequivocally forbids appellants from receiving any of the funds devised to them in that group. Thus, the will states:

"Upon the death of the said Minnie Hansen, then I direct that the principal amount remaining in the possession of said society or societies shall go to the said society or societies."

Respondents argue that, upon the death of Minnie Hansen, there will be no principal amount remaining in the possession of "said society or societies," since the bank, as alternate trustee, will be in possession of the money; and that, therefore, the societies will be entitled to nothing at that time. However, the clause "the principal amount remaining in the possession of said society or societies," is descriptive merely; it does not import a condition. When the bank was appointed as alternate trustee, it took over the duties of the appellant societies, among which was the control of the corpus of the trust. Therefore, the clause in question must, under the terms of the order of the court, be considered as referring to the bank rather than to the appellant societies.

Respondents also contend that the language in Group "C" forbids the three of the four appellants involved in that group from taking thereunder. They argue that this section of the will concludes with the statement that, in the event of the death of any of the beneficiaries under the trust after the testatrix' own death, the corpus of the trust should go to "the particular society having the administration of the trust"; from this they conclude that the society must have had the administration of the trust in order to receive the residue.

But they overlook the fact that the funds involved in these trusts are explicitly devised, at the beginning of Group "C," with the words, "I give, devise, and bequeath to the following societies the following sums or amounts," which clause is followed by the names of the societies. In such a situation, the concluding clause is mere surplusage, and cannot be given the effect of qualifying the unequivocal opening language. Group "C" (as well as Group "J") comes clearly within the rule that a devise to one, with a provision that, after receiving the gift, he pay certain sums of money or render some specified performance to persons designated, is generally construed, not strictly a condition, the breach of which may forfeit the estate, but rather as imposing a personal liability upon such devisee, or as creating a charge, lien, or trust. *Morys v. Morys*, 123 Neb. 188, 242 N.W. 420.

It is unnecessary to consider the trial court's decree in so far as it is concerned with Group "N," for, under the view of the case herein adopted, it appears that there will be no residue remaining in the estate.

The decree of the trial court is reversed as to the interpretation of the language in Groups "A," "C," and "J" of the will, and the cause will be remanded for further proceedings not inconsistent with this opinion.

JEFFERS, C. J., SCHWELLENBACH, and GRADY, JJ., concur.

SIMPSON, J., concurs in the result.

[1]Reported in 208 P. (2d) 879.