**ART STUDENTS' LEAGUE OF NEW YORK
v. HINKLEY et al.**

District Court, D. Maryland.   March 11, 1929.

No. 1172.

· Venable, Baetjer & Howard and Charles McHenry Howard, all of Baltimore, Md., for complainant.

Joseph C. France, Hinkley, Hisky & Burger, Frederick J. Singley, and Stewart & Pearre, all of Baltimore, Md., and Ralph E. Lum, of Newark, N. J., for defendants.

SOPER, District Judge (after stating the facts as above). The Art Students' League of New York, a New York corporation, filed a bill of complaint against John Hinkley, a citizen of Maryland, and Fidelity Trust Company of Baltimore, a Maryland corporation, trustees under the will of Edward G. McDowell, in order to establish by judicial decree that a power of testamentary appointment, conferred by the will upon Edward McDowell, the testator's son, was validly exercised in the latter's will. The bill asks that the trustees under the father's will be required to account for and pay over to the complainant certain property in their hands to which the complainant claims to be entitled by virtue of the will of the son. After the suit was brought, Beata McDowell Clayville-Smith, a daughter of the elder McDowell, and Catherine Beata Ward, her daughter, were joined as parties defendant.

Edward G. McDowell, of the city of Baltimore, state of Maryland, died on July 3, 1913, leaving surviving him a widow and two children—a son, Edward McDowell, and a daughter, Beata McDowell Ward, now Beata McDowell Clayville-Smith. The widow died on March 29, 1917. Edward G. McDowell by his will devised and bequeathed his residuary estate to the defendant trustees, and directed that they should divide it into three equal shares, one. of which was to be held in trust for his wife for life, and to be divided after her death in equal shares between the other two shares. The testator left one of the two remaining portions of the residuary estate in trust for the benefit of his son, Edward McDowell, during his life, and di-

rected that, in case he should die without leaving a child or descendant, he should be empowered to dispose of his part of the estate by last will and testament, and in case he should die without leaving child or descendant, and without exercising the power of testamentary disposition, his share, if the wife should then be dead, should be added to the share directed to be held in trust for the testator's daughter. The last-mentioned share the testator directed should be held in trust for the benefit of his daughter for life, and after her death upon further trusts with which we are not concerned in this case. The trustees were given full power of sale, lease, exchange, and other disposition of the trust property. The will was duly probated and the personal estate of the testator was duly administered in the orphans' court of Baltimore City, and the defendant trustees received and have since held both the real and personal estate which passed to them under the will. A division of the trust estate into three portions was made by the trustees, as directed by the will, and after the death of the testator's widow the share set apart for her benefit was subdivided and added to the two remaining shares.

Edward McDowell, the son, died on February 18, 1926, being a resident of the state of New Jersey at the time of his death. He left no child or descendant, but left a last will and testament, which was probated in the surrogate's office of Essex county, New Jersey, and has been hereinbefore fully set forth. It will be observed that the testator devised and bequeathed all of the residue of his estate to the complainant, in trust, to create a fund in memory of his father, to be known as the "Edward G. McDowell Traveling Scholarship," and to apply the income therefrom to the education of one or more deserving and talented art students for study abroad. The complainant believes that this will not only covered the individual estate of the testator, but constituted a valid exercise of the power of appointment over the property held in trust for him under the will of his father. Demand was accordingly made by the complainant upon the trustees to pay over and distribute to it all of the property and estate, but the trustees declined and refused to do so, doubting the validity of the will of the son as an exercise of the power of appointment; and hence this suit is brought.

The trustees, before answering the bill, filed a petition requesting the court to decline jurisdiction of the case on the ground that the circuit court of Baltimore City, which has a cognizance of equitable causes, had assumed jurisdiction of the trust estate in a cause therein entitled "Ex parte Trust Estate of Edward G. McDowell." The father's will expressly directed the trustees to administer the trust under the jurisdiction of one of the equity courts of Baltimore City. The trustees accordingly petitioned the circuit court of Baltimore City to assume jurisdiction of the trust, this action was taken by the court, and the trustees from the beginning have continuously administered the trusts under the court's direction. Consequently the trustees say the state court has acquired custody and control of the trust property. Their contention is that they are charged with a continuing trust under the jurisdiction of the state court, covering the entire estate which they now hold for the exclusive benefit of the daughter, and that the complainant's claim to the son's share raises a controversy which the state court, having first acquired jurisdiction, should settle without interference from the court of the United States.

The assumption of jurisdiction over the administration of the trust by the circuit court of Baltimore City is not founded upon statute, but conforms to a long-established practice in equity in this state. Trustees appointed by will may, of their own option and for their own protection and guidance, petition the equity court to assume jurisdiction of the trust, or, as in the case at bar, the instrument creating the trust may direct that the trust be administered under the supervision of the court. In either case, the proceeding is usually ex parte, as happened in the case at bar. The province of the court under these circumstances is described in Baer v. Kahn, 131 Md. 17, 25, 101 A. 596, 599, where it was said that if "a court of equity, by an appropriate decree, assumes jurisdiction of the trusts and directs them to be executed under its direction and supervision, the authorities agree that the situation of the trustees is thereby so far changed that they must thereafter secure the sanction or ratification of the supervising court for the successive steps of their administration of the trust."

The trustees refer chiefly to the case of Kline v. Burke Construction Co., 260 U. S. 226, 43 S. Ct. 79, 67 L. Ed. 226, 24 A. L. R. 1077, in which the Supreme Court held that an injunction against the prosecution of a suit in the state court involving identically the same issues as a prior suit in the federal court was improperly issued by the latter, since both actions were in personam and only money judgments were sought. In the course of the discussion the court said:

"It is settled that, when a state court and a court of the United States may each take jurisdiction of a matter, the tribunal whose jurisdiction first attaches holds it, to the exclusion of the other, until its duty is fully performed, and the jurisdiction involved is exhausted. * * * The rule is not only one of comity, to prevent unseemly conflicts between courts whose jurisdiction embraces the same subject and persons, but between state courts and those of the United States it is something more. 'It is a principle of right and law, and therefore of necessity. It leaves nothing to discretion or mere convenience.' Covell v. Heyman, 111 U. S. 176 [4 S. Ct. 355, 28 L. Ed. 390]. The rule is not limited to cases where property has actually been seized under judicial process before a second suit is instituted in another court, but it applies as well where suits are brought to enforce liens against specific property, to marshal assets, administer trusts, or liquidate insolvent estates, and in all suits of a like nature. Farmers' Loan & Trust Co. v. Lake Street El. R. Co., 177 U. S. 51 [20 S. Ct. 564, 44 L. Ed. 667]; Merritt v. Steel Barge Co., 24 C. C. A. 530, 79 F. 228, 49 U. S. App. 85. The rule is limited to actions which deal either actually or potentially with specific property or objects."

The trustees rely especially upon the reference in this quotation to the administration of trusts. But it is noteworthy that no such question was involved in the case before the court. The inclusion of trusts in the statement of the rule seems to have originated in the opinion of Justice Shiras in Farmers' Loan & Trust Co. v. Lake Street El. R., 177 U. S. 51, 61, 20 S. Ct. 564, 44 L. Ed. 667. That was a suit for the foreclosure of a bond mortgage, and meanwhile for a receivership, which had first been filed in the federal court by the trustee under the mortgage. Subsequently the mortgagor applied for and got an injunction from the state court enjoining the trustee from foreclosing the mortgage. Under these circumstances, the Supreme Court held that the jurisdiction of the federal court having previously attached, the state court should not have issued the injunction. In referring to the administration of trusts, no doubt the court had in mind the trusts created by the bond mortgage for whose enforcement the foreclosure and receivership were required. The case has no similarity to that at bar.

The practice of the equity court in assuming jurisdiction of the administration of trusts under a will is somewhat analogous to a practice which was quite prevalent in Maryland before the National Bankruptcy Act (11 USCA), under which the property of an insolvent debtor was transferred by deed to an assignee for the benefit of creditors, and the estate was administered under the supervision of the state court in accordance with the provisions of the statute codified in article 16, sections 252 to 258, of the Maryland Code. It has been decided that the pendency of such a proceeding in a state court does not constitute such a suit involving custody of the property as will prevent a federal court from assuming jurisdiction over certain matters included within the administration of the trust. Shelby v. Bacon, 10 How. 56, 13 L. Ed. 326. And it has been held that, notwithstanding the prior filing of a petition in the state court by the assignee, requesting direction in the conduct of the trust, the federal court, if otherwise qualified, may entertain a suit to annul the deed of assignment as invalid. Powers v. Blue Grass Bldg. & Loan Ass'n (C. C.) 86 F. 705. See also Swofford Bros. v. Mills (C. C.) 86 F. 556.

In Waterman v. Canal-Louisiana Bank Co., 215 U. S. 33, 30 S. Ct. 10, 54 L. Ed. 80, suit was brought in the federal court to test the validity of certain legacies under a will which had been duly proved in the probate court of the state, where the executor of the will had qualified and possessed itself of the property. It was held that, while the federal court could not seize and control the property in the possession of the state court, and had no jurisdiction of a purely probate character, it could as a court of chancery exercise jurisdiction, if there was proper diversity of citizenship, in favor of creditors, legatees, and heirs to establish their claims and have a proper execution of the trust as to them. The court retained jurisdiction of the suit in so far as it concerned the validity of the legacies in controversy.

It is clear that the complainant's suit does not concern property which from the viewpoint of the state court is in custodia legis, and that there is no attempt to interfere with the administration of the trust by the state court. The case primarily concerns the construction of the will of the son, so as to determine whether the gift therein bestowed upon the complainant is valid. It is true that a decision in favor of the validity of the gift would necessarily involve the termination of the trust created for the benefit of the son by the father's will, and the trustees would be required to deliver the trust property to the complainant; but this incidental result, important though it may be, does not deprive the complainant of the right to apply to the federal court for an adjudica-

tion of the controversy. For these reasons, the court declined to dismiss the bill of complaint, and the trustees filed an answer which goes to the merits of the controversy.

The defendants contend in the first place that there was no valid exercise by the son of the power of appointment given to him by his father's will. Article 93, section 339, of the Maryland Code, provides that every devise and bequest purporting to be of real and personal property belonging to the testator shall be construed to include also all property over which he has a general power of appointment, unless a contrary intention shall appear in the will or codicil containing such devise or bequest. The general rule in such matters is that, if neither the power of appointment nor the property is referred to in the will, and there is other property of the donee upon which the provisions of his will may operate, it will not be regarded as intended to execute the power. Miller, Construction of Wills, § 257. But the rule as modified by statute is that the testator is presumed to have intended to have exercised the power, unless a contrary intention appears in the will itself.

The defendants claim that such an intention is manifest in the will of Edward McDowell. It is pointed out that in the first place the will directs that the entire estate of the testator, after the payment of debts and expenses and a legacy of $5,000, shall be given in trust to the Art Students' League, to apply all the net income therefrom "to the education of one or more deserving and talented art students" abroad. It is contended that the testator must have had reference only to his individual estate, and did not intend to include the property in his trust estate, because the language suggests that perhaps there would not be more than enough for a single student, whereas, if both estates should be included, the sum total would be much more than enough for that purpose. The income received by the testator from the trustees under his father's will amounted to approximately $7,200 per annum during two or three years prior to his death. In addition, he was possessed of an individual estate of approximately $30,000. After deducting the legacy of $5,000 and the expenses of settling the estate, there would be left approximately $20,000 available to the complainant. In other words, the testator might reasonably have expected that the Art Students' League, if given the trust property, as well as the individual property, would derive an income therefrom in excess of $8,000 a year. It is proved in the case by adequate testimony that the cost of a traveling scholarship abroad would approximate $2,500, including $400 for ocean travel, $200 for railway travel abroad, $100 for lectures and special instructions, and the balance for living expenses for the year. There is also evidence of existing scholarships which pay a much smaller sum, but they are certainly inadequate to pay all of the expenses involved.

It is the opinion of the court that the considerations urged are not sufficient to show lack of intention on the part of the testator to include the trust property. It is obvious that his individual property was not enough to provide adequate revenue for even a single scholarship. An additional material fact is that the great bulk of the trust property consisted of stock in a mercantile carpet business in Baltimore, constituting $88,800 out of a total of $126,000, the market value of the trust estate as estimated by the trustees. The testator may have had in mind the uncertainties of business, and may have considered the possibility that at times not more than one scholarship could be maintained. There is also the circumstance, which throws some light upon his intention, that he directed that the scholarship should bear the name of his father, Edward G. McDowell, showing that he was not ungrateful for the support which he had received during his entire life from his father's estate. The evidence shows that the testator had no active business or earned income, but was chiefly interested in artistic pursuits.

It is also urged by the trustees that the fifth paragraph of the will indicates that the son did not intend to include his father's property. This paragraph directs that the will shall remain in full force and effect, notwithstanding children may be thereafter born to the testator. Obviously this provision of the will, in so far as it related to the trust property, was ineffective, for under the will of the father, by which the fund was created, it was provided that, if the son should leave children, his share should be equally divided between them, and it was only in the contingency that he should die without leaving children that he was empowered to dispose of his share by last will and testament. The defendants therefore insist that he could not have intended his will to operate upon his trust estate. But it is quite clear that the testator's will was intended to affect his individual property. As to so much of his interests, the testator had the power to disinherit his children.

The necessity for such a clause, if the will was to stand, notwithstanding the subsequent birth of a child, springs from the New

Jersey statutes, codified in New Jersey Compiled Statutes of 1910, volume 4, page 5865, sections 20, 21. These enactments provide that every will made when the testator has no issue living, wherein any issue he may have is not provided for or mentioned, shall be void, and the testator shall be deemed to have died intestate, if at the time of his death he leaves a child. The language of the will is very broad. By paragraph 3 all the rest and residue of the estate, of whatsoever nature and wheresoever the same may be, both real and personal, is given in trust to the Art Students' League. Considering all of these circumstances, it is the opinion of the court that the will of the testator does not show that it was not his intention to include the property over which he had a general power of appointment.

.It is next contended by the defendants that, even though the will of Edward McDowell should be interpreted as being intended to exercise the power under the will of Edward G. McDowell, nevertheless the bequest to the Art Students' League is ineffective, because it sets up a trust which is invalid (1) because the beneficiaries are uncertain and indefinite; and (2) because it violates the rule against perpetuities. This question involves the law applicable to charitable trusts, as to which there is considerable divergence between the rule in vogue in Maryland and that in most other jurisdictions in this country. It is not disputed that the bequest is valid if it is construed with reference to the law of the state of New York. The Charitable Uses Act, passed in the year 1893, as amended (see Cahill's Consolidated Laws of New York, c. 51, § 113, p. 1830), provides that no gift, grant, or devise to religious, educational, charitable, or benevolent uses, which shall in other respects be valid under the laws of the state, shall be deemed invalid by reason of the indefiniteness or uncertainty of the persons designated as beneficiaries thereunder in the instrument creating the same.

But the trustees say that the will of Edward McDowell, in so far as it constitutes an exercise of the power of appointment under the will of his father, relates back to that will, and must be construed with reference to the Maryland law. Graham v. Whitridge, 99 Md. 248, 275, 57 A. 609, 58 A. 36, 66 L. R. A. 408; Kain v. Gibboney, 101 U. S. 362, 25 L. Ed. 813; Prince de Bearn v. Winans, 111 Md. 470, 74 A. 626; Provost v. Abercrombie, 46 Md. 179, 180; Kuhn v. Fairmont Coal Co., 215 U. S. 349, 30 S. Ct. 140, 54 L. Ed. 228. On the other hand, the complainant says that the question is rather one of conflict of laws, since, although the will must be construed under the Maryland law, the trustee is a New York corporation and would hold the property in that state, and therefore the important question of the enforceability of the trust would as a practical matter depend upon the law of New York. See Mount v. Tuttle, 183 N. Y. 358, 76 N. E. 873, 2 L. R. A. (N. S.) 438; 25 Corpus Juris, 846, § 185. But it is not necessary to decide this question, since, as will appear, the trust is valid, even if it be assumed that the Maryland law governs.

The Maryland law upon the subject of charitable uses had its origin in the case of Philadelphia Baptist Ass'n v. Hart's Executors, 4 Wheat. 1, 4 L. Ed. 499, which was decided by the Supreme Court of the United States in 1819. In that case the court decided that the jurisdiction of equity to enforce trusts for charitable uses, when the persons to be benefited were not designated with that certainty which is necessary to support a private trust, was dependent upon the statute of charitable uses, 43 Eliz. c. 4, and that, this statute not being in force in Virginia, where the case arose, beneficiaries of such a trust in that state must be named or designated with the same certainty as is requisite to the validity of a private trust.

This doctrine was followed in this country by nearly all the courts in which the question arose until the celebrated Girard's Will Case, Vidal v. Girard, 2 How. 127, 11 L. Ed. 205, decided in 1844. This case arose in Pennsylvania, where it had been adjudged that the statute of 43 Elizabeth was not in force, so that the question was precisely the same as presented in Philadelphia Baptist Ass'n v. Hart's Executors, supra. The question was reconsidered. Additional authorities which were not available at the time of the prior case were brought to the attention of the court, and it was shown that the equitable jurisdiction to enforce charitable trusts was not dependent upon the statute of Elizabeth, but had in fact been exercised in the courts of England in many cases before that statute was enacted. As was said by the Supreme Court in Ould v. Washington Hospital, 95 U. S. 303, 24 L. Ed. 450: "The former idea was exploded [in the Girard Will Case], and has since nearly disappeared from the jurisprudence of the country."

Some of the states of the Union, however, refused to follow the Supreme Court in the Girard Will Case and adhered to their prior decisions. The Court of Appeals of Maryland in the case of Dashiell v. Attorney General, 5 Har. & J. (Md.) 392, 9 Am. Dec. 572,

and 6 Har. & J. (Md.) 1, decided in 1822, adopted the doctrine laid down in Philadelphia Baptist Ass'n v. Hart's Executors, supra, and has never since expressly repudiated it, although, as will appear, considerable modification has taken place. As late as 1881, in the case of Church Extension of Methodist Episcopal Church v. Smith, 56 Md. 362, the Court of Appeals declared its adherence to Dashiell v. Attorney General, and said (page 397) that, according to the uniform course of its decisions, a trust cannot be upheld unless it be of such a nature that the cestui que trust is definite and capable of enforcing its execution by proceedings in a court of chancery. That case related to a bequest of $10,000 to the Church Extension Society of the Methodist Episcopal Church, a Pennsylvania corporation, to be used as part of the perpetual loan fund of the society, and it was shown that the corporation was capable under its charter of taking such a bequest for its general purposes. It maintained a loan fund to be loaned to necessitous churches of the denomination within the United States. But the court held that, since the legacy was not given to the corporation for its own use, but only to be held as a part of the loan fund, the corporation was constituted a trustee, charged with the duty of employing the fund only for the benefit of such churches, who were the real beneficiaries. Such a trust was decided to be so indefinite that it could not be enforced. Similarly a bequest of $1,000 to the trustees of Strawbridge Methodist Episcopal Church, for the benefit of the Ladies' Mite Society of the church, was declared invalid.

This case, however, may not now be accepted as an authoritative statement of the Maryland rule. Miller on Construction of Wills, p. 465, note 10. In later decisions, testamentary gifts of like legal import have been sustained—for instance, a bequest of a sum of money to an incorporated church, the income to be applied to its Sunday school, Eutaw Place Baptist Church v. Shively, 67 Md. 493, 10 A. 244, 1 Am. St. Rep. 412, decided in 1887; a bequest to a church corporation for the benefit of a school conducted under its auspices, Erhardt v. Monthly Meeting of Friends (1901) 93 Md. 669, 49 A. 561; a bequest to the Women's Foreign Missionary Society of the Methodist Episcopal Church, a corporation, in trust to educate Bible readers in India, Woman's Foreign Missionary Society v. Mitchell (1901) 93 Md. 199, 48 A. 737, 53 L. R. A. 711; a bequest to the Church Home and Infirmary, a corporation, of a sum of money to be kept as a separate fund, the income to be used in maintaining infirm persons or free beds in the infirmary, Baltzell v. Church Home (1909) 110 Md. 244, 73 A. 151; and a bequest of the residue of an estate to a church council, the unincorporated governing body of an incorporated church, to be put on interest, and to pay the interest annually to the Board of Foreign Missions, a corporation which conducted the foreign mission work of the religious denomination, Board of Foreign Missions v. Shoemaker (1919) 133 Md. 594, 105 A. 748. It seems quite clear that, had the rule applied in these cases been in force at the time of Church Extension Society v. Smith, supra, a different decision would have been made.

The departure from the earlier rule was probably first suggested by the opinion of Chief Judge Alvey in Barnum v. Baltimore, 62 Md. 275, 50 Am. Rep. 219, decided in 1884. The court passed upon a devise of the residue of the Barnum estate to the city of Baltimore, in trust for the McDonogh Educational Fund and Institute, to be applied so as to give boys in that institution such useful mechanical education as would enable them to gain a livelihood. The city was already possessed of a fund of that name, which it had acquired under the will of John McDonogh, considered by the Supreme Court of the United States in McDonogh v. Murdoch, 15 How. 367, 14 L. Ed. 732. The Legislature of Maryland had empowered the city, by an amendment of the city charter in 1842 (Acts 1842, § 86), to receive property which might be bestowed upon it by will or deed in trust for any general corporate purposes, or in aid of the indigent or poor, or for educational or charitable purposes of any description. It was objected that the Board of Trustees of the McDonogh Fund was not an incorporated body, but merely an agency of the city, established by city ordinance, but the court held that this did not constitute an insuperable difficulty in maintaining the validity of the trust. It said (page 297):

*"The municipal corporation, taking the fund in trust, takes it for the benefit of its citizens or the public, to be applied according to the terms of the trust. It is therefore, in a certain sense, cestui que trust, as well as trustee. The property acquired by it, though in trust, is for a public use; and the corporation is liable for the execution of the trust by and through the agencies it may create for the purpose. It is not the agencies of the municipal corporation so much to which we must look for the execution of the trust, as to the corporation itself. Therefore, if the*

present bequest, instead of being to the city in trust for an educational purpose, had been to the city in trust to establish or maintain a house of correction, a hospital or pesthouse, within or without the city, there can be no doubt of the validity of such trust, and that the objects would be sufficiently defined, notwithstanding the trustees or managers of such institutions, appointed by the city, had never been incorporated by law. And that being so, there can be no substantial reason assigned why the present bequest is not equally good." (Italics supplied.)

The court was doubtless influenced in this case by the act of 1842, which, in a measure, was a legislative recognition of charitable trusts, so far as the city was concerned. But a few years later, in Eutaw Place Baptist Church v. Shively, supra, in which, as we have seen, a bequest of $1,000 to an incorporated church, to use the income for the benefit of the Sunday school, was upheld, the new doctrine was more clearly announced. The court admitted that, according to the settled law of the state, a bequest to trustees for the benefit of a vague and indefinite object is invalid, since the right to the enjoyment of it cannot be enforced, but said that the bequest in question was not of that description. "The Sunday school, as such, is not an incorporated body, it is true; but it is shown to be an integral part of the church organization, and therefore embraced within the * * * corporate functions and work of the church."

The doctrine announced in this case has since been steadily upheld, until in 1909, in Baltzell v. Church Home, supra, it was declared to be fully established. There the court, referring to the rule in Dashiell v. Attorney General, said that it had been too frequently recognized to be disturbed, and added (110 Md. 270, 73 A. 156): "But there must be a trust which is uncertain as to the beneficiaries, or which creates a perpetuity, in order to justify the court in striking down a devise or bequest, unless, of course, there be other reason for doing so. The cases in this state fully establish the doctrine, that when property is left to a corporation for such uses as are within the scope of its corporate purposes, or the objects to which the gift is to be applied are such as the corporation was organized for, then such gift cannot be declared invalid on the ground that it was in trust for indefinite objects, or in conflict with the rule against perpetuities, unless the intention to create a trust be clear. If this were not so, it would be useless to organize charitable corporations of the char-

acter of these appellees, for what we are now considering applies to both."

In passing, it may be noted that the Legislature of Maryland, by Acts 1888, c. 249 (Bagby's Code 1912, art. 93, § 328), also modified the earlier rule by declaring that no devise or bequest for charitable uses shall be held void for uncertainty with respect to the donees, provided the will making the same shall direct the formation of a corporation to take the same and such corporation shall be formed within a period of 12 months.

The defendants concede that the rule announced in the Baltzell Case now prevails, but rely upon the limitation expressed in the statement that a devise of property to a corporation for uses within the scope of its charter are valid *unless* the intention to create a trust be clear. The same qualification is found in similar language in subsequent cases. Snowden v. Crown Cork & Seal Co., 114 Md. 650, 655, 656, 80 A. 510, Ann. Cas. 1912A, 679; Gray v. Orphans' Home, 128 Md. 592, 601, 602, 98 A. 202; Conner v. Trinity Reformed Church, 129 Md. 360, 363, 99 A. 547. It is earnestly contended that in the will of Edward McDowell is found a clear intention to create a trust. This appears, it is said, not only because the residue of the estate is expressly devised and bequeathed in trust, to constitute a fund named in memory of the testator's father, but also because the trustee is given power to invest and reinvest, to apply the net income to aid deserving students, to retain investments made by the testator during his lifetime without liability for shrinkage, and by the direction that the trustee be not required to give bond or other security.

There is no doubt that these provisions would be accepted by any Maryland court as sufficient evidence of an intention to create a trust in any situation other than that of a gift, devise, or bequest to a corporation in trust for its charter purposes. The question is whether such provisions are to be taken as evidence of a trust when found in a devise and bequest in a will. There is no case in Maryland, so far as we know, in which a devise or bequest to a corporation for a corporate purpose has been declared within the qualification of the rule. The question must be answered by considering the cases in which such gifts have been upheld, and by comparison of the meaning with which the word "trust" is now used by the Court of Appeals, with the meaning attributed to it in similar circumstances before the modern doctrine was promulgated.

In Church Extension of Methodist Epis-

copal Church v. Smith it was decided that the legacies under consideration were given in trust and for that reason were void, but the very similar provisions described in subsequent cases were held to be valid because they were not trusts in any real sense. The expression "in trust," or a direction that the principal of the fund be preserved intact and the income only be used for special, as distinguished from general, corporate purposes, was held insufficient to constitute a trust. It is obvious that the change of doctrine by the Court of Appeals has been accompanied by a change in its definition of the word "trust," when it relates to a charitable use or purpose within the functions of a corporate trustee, or rather that the change of doctrine has been accomplished by a redefinition of the term. It is equally clear that the word "trust," in the limitation of the rule, is used in the new and not in the old sense.

Discussions in the later cases help us to form an idea of what is now meant when it is said that such a devise as we have in the case at bar may be held to be invalid only if there is a clear intention to create a trust. In Baltzell v. Church Home, supra, the court made reference to the valid bequests in Eutaw Place Baptist Church v. Shively and Halsey v. Convention of P. E. Church, 75 Md. 275, 23 A. 781, and then used these words (110 Md. 271, 73 A. 156): "The 'trust' referred to in those cases is of the character that requires all such corporations to hold their properties for the purposes for which they are authorized to use them under their charters." And again, on page 274 (73 A. 157), the court said: "When a testator designates the use of property left by him to a corporation of a character of these two, and those uses are just such as the corporation would make of it in carrying out the objects and purposes of its incorporation, it is like making a person a trustee for himself to declare such uses a trust. It would be equivalent to saying the corporation took the property in trust for such purposes as its charter authorized. That may be true in the sense indicated above, as all corporations hold their property in trust to use it as its charter and the law requires, but that is not the kind of trust which the appellants would have to establish the existence of in order to sustain their contention." Cited with approval in Rydzewski v. Grace Church, 145 Md. 531, 536, 125 A. 717.

A similar statement is found in the decision of Judge Morris, of this court, in Domestic & Foreign Missionary Society v. Gaither (C. C.) 62 F. 422, 426, where money was bequeathed to a domestic and foreign missionary society to be applied to domestic missions. The court said: "It would seem, therefore, that money given to the corporation as this legacy was is not to be held by it upon any trust, but is to be expended by it in the missionary work which it carries on within the United States. It carries on its missions and missionary works through the instrumentality of boards, committees, treasurers, bishops, clergymen, and agents; being a corporation, it can only act through its officers and agents, but the work is its own immediate and special work. This is not a case in which there is a trust or trustee or cestui que trust. It is a direct expenditure by a corporation for the very object for which it was created."

In Novak v. Orphans' Home, 123 Md. 161, 90 A. 997, Ann. Cas. 1915C, 1067, the court declared a devise of real property to a benevolent corporation in trust for a purpose within its corporate functions to be void, because it was coupled with the condition that the property should not be sold. In discussing the matter it said (page 165 [90 A. 998]): "Even if it was to be treated as a gift directly to the Young Catholics' Friend Society, and to be regarded as constituting a trust or not, according as the purposes contemplated in the devise were such as came directly within the corporate purposes for which the * * * society was chartered, it must still be held void"—clearly suggesting that the existence vel non of the trust might depend upon whether the trust purposes were also corporate purposes.

More recently, the Court of Appeals in Conner v. Trinity Reformed Church, 129 Md. 360, 99 A. 547, said: "The general rule is that where a legacy or devise is given to a corporation for the express purpose of carrying out any of its corporate functions, such donation will not be regarded as creating a trust unless the intention to create a trust be clear, but as a gift to the corporation itself upon condition that it be applied to the particular corporate use."

The exceptional character of a devise to a corporation for charitable purposes within its domain is again shown by the contrast between such a gift and one for similar purposes to individual trustees. For instance, it was held in Missionary Society v. Humphreys, 91 Md. 131, 46 A. 320, 80 Am. St. Rep. 432, that a devise of real property to an individual trustee to collect the income therefrom and pay it from year to year to a number of incorporated bodies for charitable purposes, was invalid. Speaking of this

contrast in the case of Woman's Foreign Missionary Society v. Mitchell, supra, which upheld a bequest to the society to educate Indian girls, the court said (93 Md. 205, 206, 48 A. 740):

"Now, perhaps, had the precise phraseology, which is found in the will before us, been used in making a like devise and bequest to a natural person, it might be said that the design was to create a trust, because the purposes indicated are not those ordinarily performed by an individual; but when it is remembered that the very end which the corporation here made the beneficiary was organized to effect is the education of Bible readers and the instruction of girls in foreign lands, it becomes evident that the property was given to the corporation not in trust for indefinite objects, but that it was given to it to be used for its recognized and clearly defined corporate purposes. The specific design of the gift is that the proceeds of the property shall be used, that is spent, by the beneficiary for its chartered ends and not for some one else's benefit. The corporation is not to hold the fund for the use of others, but it is to spend that fund in the prosecution of its missionary work. * * * It may and probably would be accurate to say that the provision requiring six girls to be educated who are to be named as in the will indicated, is a condition annexed to the gift as contradistinguished from a trust impressed upon the gift. The testatrix could have had no object in creating a trust, since without a trust precisely the same application will be made of the funds under the charter of the society as if there had been or could be a valid appropriation of them to these identical ends by means of a trust."

See, also, American Colonization Society v. Soulsby, 129 Md. 605, 99 A. 944, L. R. A. 1917C, 937.

It is also. of significance that gifts and devises to corporations for charitable purposes, which we hold to be valid in Maryland, because we deny that they are trusts, would be called charitable trusts in those jurisdictions in which such settlements are valid in accord with the rule of the Girard Will Case. The most important characteristics of these donations are that they shall be made to a person or corporation for the use of others; that they contemplate perpetual existence, or, in other words, offend the rule against perpetuities as applied to private trusts; and that the beneficiaries, although described as belonging to a certain class, relate to indefinite and unascertained individuals. 11 Corpus Juris, 302; 5 R. C. L. 294. It may be noted, however, in passing, that Maryland does not adopt the general rule applicable to charitable trusts as to conditions against alienation. For the general rule, see 5 R. C. L. 304; 11 C. J. 354. It was held in Novak v. Orphans' Home, supra, that a devise of property to a corporation in trust for corporate purposes was invalid, because of the added condition that the property should not be sold.

In another particular, of paramount importance, devises to corporations for charitable purposes in Maryland have some resemblance to charitable trusts; that is to say, in the matter of enforcement. For the general rule, see 5 R. C. L. 359. It is essential that this power exist somewhere, for otherwise it would be possible to frustrate the intention of the testator or donor; and there would be no need of further argument to justify a declaration against the validity of the gift. Barnum v. Mayor, etc., of City of Baltimore, 62 Md. 275, 298, 50 Am. Rep. 219. There seems to be no difficulty in this respect in Maryland. Nothing is found in the cases which have sustained the validity of such gifts to indicate that the donee's control is absolute and unfettered. On the contrary, in the only case in which the question was directly raised, the power to enforce the conditions of the charitable use was upheld, and in a number of cases general statements to the same effect are found.

In Peter v. Carter, 70 Md. 139, 16 A. 450, there was a devise to Rock Hill Academy, an incorporated institution, of certain property not to be appropriated for any building or improvement, but to constitute a perpetual fund for education. It was held that the testator intended the principal sum to constitute a permanent fund, of which the income only could be used for the educational department of the institution. The majority of the trustees decided to sell the property and to use the money to purchase and improve additional land. Upon the suit of one trustee, who opposed the project, an injunction was issued forbidding the diversion of the fund, and requiring that it should be devoted to the testator's declared purposes.

In Halsey v. Convention of P. E. Church, 75 Md. 275, 23 A. 781, in which there was a bequest of property to the church body, to be used as a place for a church school, it was said (page 281 [23 A. 782]): "The statute of 43 Elizabeth in regard to charities is not, it is true, in force here, but it is well settled that a court of chancery has jurisdiction, independent altogether of the statute, to enforce a trust for charitable and religious pur-

poses, provided the devise or bequest be made to a person or body corporate capable of taking and holding the property so devised and bequeathed, and provided, further, the object and character of the trust be definite and certain. When these exist—when the gift is made to one capable of taking it, and when the trust is declared in definite terms —a court of chancery has the same power to enforce such a trust for a charitable or religious purpose, as it has to enforce a trust for any other purpose."

In American Colonization Society v. Soulsby, 129 Md. 605, 99 A. 944, L. R. A. 1917C, 937, the question was raised whether the corporation was using the funds given to it for the purposes declared in the instrument of trust, as to which the court said (page 620 [99 A. 949]): "If the society is improperly managed in respect to the business placed upon it, in consequence of the grant, then the aid of a court of equity may be invoked in order that the evils existing may be corrected and the provisions of the grant executed, if possible."

See, also, Eutaw Place Baptist Church v. Shively, 67 Md. 493, 495, 10 A. 244, 1 Am. St. Rep. 412; Erhardt v. Baltimore Monthly Meeting of Friends, 93 Md. 669, 679, 49 A. 561; Baltzell v. Church Home, 110 Md. 244, 271, 73 A. 151.

■ The practical conclusion from this long line of cases is that, to say the least, the appointment of a corporation to hold property in trust for limited purposes comprehended by its charter is a very potent circumstance tending to show that no trust, as that term is construed by the Court of Appeals of Maryland, has been created. No evidence of a trust has been found in any case which has actually arisen, and the court has in no way indicated in what manner it would be possible for a testator or donor to give evidence of an intent to create a trust in connection with the kind of settlement under discussion. There is, indeed, much ground for the argument advanced by the complainant in this case that a trust cannot be created in Maryland by a gift to a corporation for a corporate purpose. A somewhat similar attitude was taken by the Court of Appeals of New York during the period prior to 1893, when charitable trusts were not recognized in that jurisdiction. See Wetmore v. Parker, 52 N. Y. 450; Tabernacle Baptist Church v. Fifth Avenue Church, 60 App. Div. 327, 70 N. Y. S. 181.

But it is not necessary to go so far in the case at bar. It is sufficient to say that there is no essential distinction between the gift in this case and those which our Court of Appeals has upheld in other litigation. It is true that the terms and conditions in the will of Edward McDowell which tend to show an intent to create a trust are more numerous and varied; but, after all of them are taken into consideration, it still remains clear that the Art Students' League is both trustee and cestui que trust in the same sense as were the donees in the Maryland cases which have been discussed.

■ Finally, it is contended on behalf of the defendants that the Art Students' League cannot maintain traveling scholarships, because its charter specifies that the business shall be done in New York City. The charter states that the corporation was formed for the establishment and maintenance of academic schools for a thorough study in painting, drawing, and modeling, and "all that pertains to a complete system of education in art." It further provides that the place for conducting the business of the society is to be in the city of New York. The evidence shows that the complainant's art school is the largest in the world, teaching the fine arts alone. It has 40 teachers and 3,000 students. Edward McDowell was a student from 1890 to 1893. It has no stockholders, and is not run for profit. It is conducted in a building which it owns in the center of New York City. Some of its teachers and students have gained pre-eminence in their profession. The school has a limited endowment, which enables it to give scholarships to assist students in New York to pay the expenses of their tuition. But it has never had sufficient funds to grant traveling scholarships abroad. A by-law of the institution contemplates study abroad, since it provides for remission of fees of members who go to Europe to study.

Art schools of this character in America are able to give technical training, as well as schools in foreign countries; but a great cultural advantage is to be derived from traveling abroad, and it is said that no artist is adequately trained until he has traveled and studied abroad, and has seen the world famous masterpieces of art. Obviously the great advantage to be acquired by art students from foreign travel is well within the charter purpose, to encourage all that pertains to a complete system of art education.

It is contended that a bestowal of funds to enable an art student to travel abroad is outside the powers of the school, because under its charter its place of business is New York City. There is no substance in this argument. It has been held that, if the lo-

cation of a school is fixed by its charter, the location cannot be changed without amendment; but it does not follow that all the powers conferred upon the corporation must be exercised at the designated place, and no other. See 11 Corpus Juris, 982, 983. It is also held that a corporation, under its general and implied power, may receive contributions to an endowment fund and bind the college to furnish tuition thereafter to one or more students, even in another educational institution than its own. 11 Corpus Juris, 998; Genesee College v. Dodge, 26 N. Y. 213.

It is a matter of regret to the court that this case may not go on appeal to the Court of Appeals of Maryland, the only tribunal which is empowered to speak with final authority on questions of Maryland law. Since it may not be so, the main question has been discussed at unusual length.

A decree in accordance with this opinion will be signed.