**UNITED STATES v. MERCANTILE TRUST CO. OF BALTIMORE et al.**
Civil Action No. 2594.

District Court, D. Maryland.

Oct. 13, 1945.

Bernard J. Flynn, U. S. Atty., of Baltimore, Md., Sam'l O. Clark, Jr., Asst. Atty. Gen. U. S., and Andrew D. Sharpe and Frederic G. Rita, Sp. Assts. to Atty. Gen., for plaintiff.

Arthur W. Machen and Francis B. Burch, both of Baltimore, Md., for defendant.

CHESNUT, District Judge.

In this case the United States is suing to establish and enforce a lien for federal income taxes against income which has accrued, and is payable by the Mercantile Trust Company of Baltimore, Trustee under the will of Mary K. Findlay, to a beneficiary therein, John V. L. Findlay.

The claim of the government is for federal income taxes duly assessed to and now payable by John V. L. Findlay in the aggregate sum of $1158.61, for three taxable years. On July 1, 1944, officers of the Internal Revenue Department visited the office of the Mercantile Trust Company, Trustee, and delivered notices of levy and lien on the income payable to Mr. Findlay, then in the hands of the Trustee. On July 1, 1944 it was ascertained that the amount

of income accrued and payable to Mr. Findlay was $449.50. On or about August 1, 1944, the officers again visited the Mercantile Trust Company, Trustee, and gave notice of levy and lien at which time they ascertained that the accrued income so payable to the beneficiary then amounted to $1004.88.

On August 9, 1944 the Mercantile Trust Company, Trustee, filed its civil action in this court (Docket No. 2302) against George Hofferbert, Collector of Internal Revenue, to vacate the levy and notice of lien as invalid, principally on the ground that the income payable to Findlay arose under a spendthrift trust which was being administered under the jurisdiction of the Circuit Court No. 2 of Baltimore City. That case in due course was heard and determined by the court and the complaint dismissed. A written opinion was filed December 21, 1944, to which reference is made (Mercantile Trust Co. v. Hofferbert, D. C., 58 F.Supp. 701) for a fairly full discussion of the applicable law. For the reasons therein given this court was of the opinion that the income payable to Mr. Findlay as beneficiary under the will was not exempt from the lien for federal income taxes.

On May 23, 1945 the government filed this present suit to establish and enforce the lien. It is conceded that the amount of income now in the hands of the Trustee otherwise payable to Mr. Findlay as beneficiary, amounts to $1158.62. Additional income which has accrued in the trust since the institution of this suit has been paid over to the beneficiary, the Trustee retaining only a sufficient amount to meet the claim of the government if finally established. This suit as originally instituted was against the Mercantile Trust Company of Baltimore without designating the representative capacity in which it held the funds. At the trial of the case, to meet the technical point made by the defendant, leave was given to amend the complaint and name the defendant as Trustee. It appears also that the notices of lien above referred to were addressed to the Mercantile Trust Company without designating it as Trustee; but in view of the proceedings which have taken place and the well established facts in the case, that possibly technical defect seems unimportant.

The basis for the government's lien is to be found in 26 U.S.C.A. Int.Rev.Code, § 3670 which reads as follows:

"Sec. 3670. Property subject to lien.

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition· thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

Other related sections of the Internal Revenue Code, particularly sections 3678, 3690 and 3692, 26 U.S.C.A. Int.Rev.Code, §§ 3678, 3690, 3692 were discussed in the opinion in the former case above referred to. Evidence has also been taken in this case with respect to the current practice and procedure by the Collector in federal tax collections. There seems to be no substantial irregularity or defect in the procedure which has been taken in this case to collect the taxes. At the times the levy and notices of lien were given to the Trustee the federal officers also exhibited to it warrants of distraint issued to them, but they are not important here as this proceeding is under section 3678 to enforce the lien by sale, and not for sale under distraint, as to the applicability of which to this kind of property or rights to property, there is some conflict of judicial authority as noted in the opinion in the first case.

The principal defense relied upon here by both defendants is that the income payable to the beneficiary is not subject to attachment, distraint or execution in any form because it is said that under the Maryland law income from a spendthrift trust may not be subjected to the claims of creditors. As this proposition has been fully discussed in the opinion in the former case, it is unnecessary to repeat what was there said. I must adhere to the conclusion then reached.

In addition to that contention, the principal defense now urged is that the income from the trust fund is in *custodia legis* and is, therefore, not subject to seizure and sale or otherwise direct enforcement of the lien by order or decree of this court, but can only be reached by the Collector of Internal Revenue on petition filed by him in the Circuit Court No. 2 of Baltimore City setting up his claim as adjudicated in this case and asking that court, which it is said has possession of the fund, to direct the Trustee to pay it over to the collector.

The contention that the income is a fund in *custodia legis* is based on the following situation which appears fully stated in the papers in the first case above referred to.

Mary K. Findlay, the mother of the income taxpayer, John V. L. Findlay, died January 8, 1939 leaving a will which was probated in the Orphans Court of Baltimore City. In it the testatrix gave to the Mercantile Trust Company of Baltimore, as Trustee, a certain fund in trust to pay the income arising therefrom to her son John V. L. Findlay, during the term of his natural life in monthly instalments "his receipt alone to be a sufficient acquittance therefor". There was supposed ambiguity in the provisions of the will as a whole with respect to certain questions including whether the quoted language constituted a spendthrift trust. Thereupon the Mercantile Trust Company as executor and trustee under the will instituted a proceeding in the Circuit Court No. 2 of Baltimore City, a Maryland State Court, to which all persons having any interest under the will were made parties. Pending the proceedings the parties reached a compromise agreement which was carried out and made effective by decree of the court by which (1) the court assumed jurisdiction of the completion of the administration of the trust created by the will, and further actions of the trustee were to be subject to the approval and supervision of the court; (2) the amount and composition of the trust fund was stated; and (3) the executor was directed to forthwith transfer and pay over to itself as trustee the securities and cash constituting the trust fund, and "that said trustee shall pay the net income therefrom in monthly instalments to the defendant, John V. L. Findlay, during his life, *and not into the hands of any other person, whether claiming by his authority or otherwise* (italics supplied); and (4) the court retained jurisdiction for the purpose of supervising the administration of the trust and for the purpose of deciding any questions which may arise in the course thereof.

The evidence in the case does not show what subsequent proceedings have occurred in the administration of the trust in the State court except that pursuant to a standing rule of said court the securities constituting the principal of the trust fund have been registered by the Trustee in its name, subject to the order of the Circuit Court No. 2 of Baltimore City, and within a few days before the trial of the instant case John V. L. Findlay, the beneficiary, has filed a petition with the court asking a rule upon the Trustee to show cause why it should not be adjudged in contempt of court for not paying over the income which it has retained to meet the Collector's claim for income taxes if established. It appears no action has been taken by the state court on this petition.

■■ While I have reached the conclusion the government has a valid lien on the taxpayer's income now in the hands of the Trustee, the question whether that lien can properly be enforced in this court by sale, or as the fund is in cash, by direct order of this court to the Trustee to pay over to the government, or whether the method of enforcing the lien should be by petition of the government in the state court, is not free from difficulty. The doctrine of law here invoked by the defendant is the so-called "non-interference" rule under which, where one court has first taken possession of or has jurisdiction over a fund in controversy, another court though of equal jurisdiction may not validly exercise control over the fund by an action in rem. The purpose of the rule is, of course, to prevent conflicts in jurisdiction and it is particularly important and necessary to avoid conflicts between state and federal courts. It is generally said that the doctrine applies only where both judicial proceedings are in rem or quasi in rem. This particular subject was discussed but not definitely decided, because unnecessary to the decision, in the opinion in the first case.

The precise question is whether the accumulated income now admittedly payable by the Trustee to the taxpayer can properly be considered to be in the possession or control of the state court. The instant case, however, is further complicated by the fact that the income is payable from a spendthrift trust, at least as so heretofore determined by the consent decree of the state court, and as already noted, the decree of that court directed that the payment should be made to John V. L. Findlay, the taxpayer, "and not into the hands of any other person, whether claiming by his authority or otherwise." As already noted, the will did not contain this precise phraseology but that is the language of the consent decree and is the language of legal art which has long been regarded as sufficient and appropriate to create a spendthrift trust.

Counsel for the government relies on a case in this Circuit, Art Students League v. Hinkley, D. C., 31 F.2d 469, affirmed, 4 Cir., 37 F.2d 225, certiorari denied 281 U. S. 733, 50 S.Ct. 247, 74 L.Ed. 1149, in support of his contention that the administration of the trust under the jurisdiction of the Circuit Court No. 2 of Baltimore City does not preclude the direct enforcement of the lien in this separate proceeding in this court. In that case the opinion of the District Court of Maryland was written by Judge Soper when District Judge. He had been Chief Judge of the Supreme Bench of Baltimore City, the judicial administrative tribunal for the several state courts of Baltimore City, and was, of course, thoroughly familiar with the subject matter of the administration of trusts in both equity courts of Baltimore City. In his opinion, 31 F.2d 471, 472, he reviews the nature of such jurisdiction over testamentary and similar trusts and held that such assumption and continuation of jurisdiction in an ex parte proceeding by a trustee did not preclude the District Court of Maryland, in a separate and independent proceeding, from determining the question of whether a power contained in the will creating the trust had been validly exercised even though adjudication of that question might result in a termination of the trust and the trustee would be required to deliver the trust property to the complainant in the federal court. In the opinion of the Circuit Court of Appeals for the Fourth Circuit, 37 F.2d 226, it was said:

"The proceeding in the state court, an ex parte proceeding by the trustees under the will of Edward G. McDowell asking the court to administer the trusts created by that will, was commenced in 1914. But we think it clear that the trustees are not officers, such as receivers, administrators, sheriffs, and marshals, whose possession of property is the possession of the court. The trustees were not appointed such by the court, and they did not acquire possession of the property by an order of the court. The possession of a sheriff by virtue of a writ issued by his court, or the possession of receivers, taken by virtue of an order of the court appointing them, is by general consent to be regarded as the possession of the court. But it seems to us an unauthorized and improper extension of the noninterference doctrine to treat the possession of the trustees here as the possession of the circuit court of Baltimore City. On the other hand, the trustees are more reasonably regarded as mere suitors, who have possession of the property in dispute; but whose possession could not prevent the trial court from taking jurisdiction to grant the relief asked in the bill."

Shortly thereafter, in a somewhat similar situation, the Supreme Court of the United States in Commonwealth Co. v. Bradford, 297 U.S. 613, 619, 56 S.Ct. 600, 602, 80 L. Ed. 920, cited the Hinkley case with approval. In the opinion of Mr. Justice McReynolds, it was said "property in its (trustee's) possession is not in *custodia legis* as in case of receivers."

But counsel for the defendants in this case now rely strongly on the later Supreme Court case of Princess Lida v. Thompson, 305 U.S. 456, 59 S.Ct. 275, 278, 83 L.Ed. 285. They contend that it has in effect overruled Hinkley v. Art Students League. I doubt that the Princess Lida case has this broad effect. I think it was only the application of the general rule of "non-interference" to the particular facts of what was described by Mr. Justice Roberts for the court as an "unusual state of affairs." This arose from a controversy between trustees and beneficiaries of a fund. Under the applicable Pennsylvania law the trustee first started an action for accounting as to the fund in a state court of Pennsylvania, and promptly thereafter some of the beneficiaries filed a similar suit in a federal court in Pennsylvania. One of the beneficiaries had also intervened in the state court proceedings and filed exceptions to the trustee's account. Both the state and federal courts had issued injunctions to the parties restraining continued conduct of litigation in the other court. The appeal to the Supreme Court of the United States was taken from the judgment of the Supreme Court of Pennsylvania affirming the jurisdiction of the state court and its injunction. It was held by the Supreme Court of the United States that the controversy was in rem or quasi in rem and that its proper determination in either case necessarily required a substantial management or disposition of the fund in controversy. In this situation it was finally held that the federal court was without jurisdiction to adjudicate the case. There is no indication in the opinion that the court intended to overrule the Bradford case which in fact was cited with approval (305 U.S.

at page 466, 59 S.Ct. at page 280, 83 L.Ed. 285, note 19) in connection with the following quotation from the opinion:

"We have said that the principle applicable to both federal and state courts that the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other, is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted, but applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property. The doctrine is necessary to the harmonious cooperation of federal and state tribunals. While it has no application to a case in a federal court based upon diversity of citizenship, wherein the plaintiff seeks merely an adjudication of his right or his interest as a basis of a claim against a fund in the possession of a state court, this is not such a case. No question is presented in the federal court as to the right of any person to participate in the res or as to the quantum of his interest in it. The contentions are solely as to administration and restoration of corpus."

The defendants contention here that the Princess Lida case in effect overrules Hinkley v. Art Students League, supra, seems to be based partly on the reference by Mr. Justice Roberts in the above quotation to ·the administration of trusts, in this respect following similar language in the much earlier case of Farmers Loan & Trust Co. v. Lake St. Elevated R. et al., 177 U.S. 51, 61, 20 S.Ct. 564, 44 L.Ed. 667. In the Hinkley case in the district court (31 F.2d 472) Judge Soper had taken the view that the reference to administration of trusts in the earlier Supreme Court cases had reference to the particular kind of trust involved in those earlier cases, and particularly that of Farmers Loan & Trust Co., where the proceeding was for foreclosure of a bond mortgage and incidental receivership. Judge Soper thought that the administration of trusts thus referred to did not apply to the usual form of administration of trusts under the jurisdiction of the state equity courts in Baltimore City. In the still later case in the Supreme Court of the United States, Mandeville v. Canterbury, 318 U.S. 47, 50, 63 S.Ct. 472, 87 L. Ed. 500, both the Princess Lida case and the Bradford case were cited with approval.

Counsel for the government in this case relies simply upon the authoritative effect of the Hinkley case. On the other hand, counsel for the defendants similarly and simply rely on the Princess Lida case. I think these respective contentions are an over-simplification of the precise point now presented. It does not seem to have been presented in any of these cases just reviewed. In all of them the questions presented involved the power of the federal court to adjudicate rights; but they did not deal directly, or at least not primarily, with the method of enforcing the rights after adjudication. And this is the particular problem that is here sharply presented.

█ I think the point is not free from difficulty for the proper decision. On the one hand, it is of public importance that the federal government should not be embarrassed and impeded in the collection of taxes. On the other hand, it is perhaps equally important to avoid conflict of jurisdiction between federal and state courts. While I think the federal cases just reviewed establish the power and jurisdiction of the federal court in this case to adjudicate the government's rights to a lien on the income under the trust, I do not think they necessarily go to the extent of determining that the right when established can be directly enforced against a fund if still in the possession and under the control of the state court, other than by intervention in that court and application to it for proper disposition of the fund. The precise question therefore is whether under the stated circumstances the income payable by the Trustee to the taxpayer can fairly be considered as still in the possession or under the control of the state court. The government is here requesting an order or decree of this federal court directing the Trustee to pay over the accumulated income to the Collector of Internal Revenue, without application to the state court. On this part of the relief asked in this case the proceeding is essentially one in rem as to the income. I take it also that the principal of the trust fund, being registered in the name of the Trustee, "subject to the order of the Circuit Court No. 2 of Baltimore City" is undoubtedly under the direct control of the state court. Of course this case in no way affects the principal of the trust fund; but only the income. And

the question is thus seen to be whether the state court has entirely executed or exhausted its jurisdiction over the income, or is the latter still in *custodia legis*.

■ There are very many trusts of this same general nature which are being administered under the jurisdiction of Maryland equity courts. In many such cases the Trustee states annual or periodic accounts which are referred to an auditor of the court who files his account determining the amount of income payable to beneficiaries, and the auditors' accounts, unless excepted to, are in due course finally ratified and approved by the court and the sums payable to the beneficiaries then become debts due and payable from the trustees to the beneficiaries respectively. In such cases it is my opinion that the state court has completed its jurisdictional control over the fund and the latter cannot be said to be still in *custodia legis* but is in fact subject to attachment and execution in a separate proceeding in a law court of the state; and likewise I think by appropriate action in the federal court under federal statutes, as in this case. Williams, Garnishee, v. Jones, 38 Md. 555; In re Hollander, D.C.Md., 181 F. 1019 (Judge Rose). But until the equity court has completely determined the proper disposition of the income, it may not be directly subjected to the force of the attachment in the separate proceeding in another court. Early v. Dorsett, 45 Md. 462, 467; Groome v. Lewis, 23 Md. 137, 8 Am.Dec. 563, and 38 C.J.S., Garnishment, p. 251, § 49.

These last cited Maryland cases did not involve spendthrift trusts. In the instant case the state court has, by a consent decree, to which all persons in interest were parties, not only determined that the trust under Mrs. Findlay's will was a spendthrift trust, but has in its decree expressly directed that the income therefrom shall be payable to John V. L. Findlay during his life "and not into the hands of any other person, whether claiming by his authority or otherwise"; and the court retained jurisdiction for the purpose of supervising the administration of the trust. It appears from the evidence in this case that pursuant to this general order of the court the Trustee has from time to time paid over the net income to Mr. Findlay without awaiting or obtaining annual or periodic auditorial accounts of income. It would seem to follow that the income now withheld by the Trustee is a debt due from it

to Findlay, the taxpayer, which should be subject to direct disposition in this separate tax proceeding against the Trustee and Findlay as defendants, save only for the doubt created by the express general order or decree of the state court that the Trustee should pay the income to Findlay only. It is clear enough that a payment by the Trustee to an ordinary creditor of Findlay would be literally contrary to the order of that court and it is arguable that the control of the state court in this particular case continues until the income has been paid by the Trustee in literal compliance with the terms of the court decree or until the state court otherwise directs.

In this unusual situation this court must decide between two important policies both affecting the public interest. Should the greater weight be given to the facility of collection of taxes by the federal government or to the avoidance of possible conflict between the federal and state courts? After much consideration I reach the conclusion that the latter course should be followed. It will be noted that in the instant case both the Trustee and the beneficiary are parties defendant and therefore if this court has, as I think is the case, jurisdiction to adjudicate the existence of the lien in favor of the government, the judgment will be binding on both and res adjudicata unless it should be reversed on appeal. While it is not appropriate for this court to say what order should be passed by the state court if the government petitions there for an order on the Trustee to pay over the income, it would seem to logically follow that the United States would be entitled to obtain such an order, unless the state court should be of the opinion that this court was without jurisdiction to make the adjudication. But however that may be, if the decision of the state court should be adverse to the United States, I presume of course that an appeal would lie first to the Court of Appeals of Maryland and ultimately if necessary, to the Supreme Court of the United States where the matter would doubtless be finally determined. United States v. Bank of New York, 296 U.S. 463, 479, 56 S.Ct. 343, 80 L.Ed. 331.

■ I conclude therefore that the plaintiff in this case is entitled to a judgment adjudicating its right to a lien on the income in the hands of the defendant Trustee; but that the proper method of enforcing the lien is by application to the state court to direct the Trustee to pay

over the same to the Collector of Internal Revenue. I have signed a judgment to this effect.

I have also made and filed separately detailed findings of fact and conclusions of law. I understand there is no real controversy as to the facts.